(33 App. Div. 12.)

## WEGENAAR et al. v. DECHOW.

(Supreme Court, Appellate Division, Fourth Department. July 26, 1898.)

1. SALE—EXECUTORY CONTRACT.
    A contract for the future delivery of a monument, with provisions that it should "remain the property of the vendor, with the right to remove and hold the same until fully paid for," is an executory contract.

2. SAME—CONSTRUCTION OF CONTRACT.
    The words in a contract for a monument that it was to be constructed of dark Quincy granite, "free from unnatural spots and rust," and that, if it was not as described, the vendee would not be required to pay for it "until satisfactory as per agreement," are descriptive of the article to be furnished, and obligate the vendor to furnish a monument essentially corresponding with such description.

3. SAME—RESCISSION BY VENDEE.
    A vendee, on delivery of a monument, noticed certain discolorations, which he thought to be rust, and so informed vendor, who assured him that they were only surface stains, caused by the iron bands used in shipping, and that they would disappear by the action of the elements or could be removed by an application of oxalic acid. The vendee thereupon made a payment on the contract price. Vendee subsequently attempted to remove the stains with oxalic acid, but was unsuccessful. Vendee thereafter made another payment on the contract price. Up to this time there had been no heavy rain, but thereafter a heavy rain took place, after which the stains increased in size, and thereupon vendee notified vendor that as soon as he produced a satisfactory monument, as per agreement, the balance of the contract price would be paid. *Held* that, as the vendee was lulled into inaction by reason of vendor's presumable special knowledge on the subject, the vendee had a right to rescind the contract.

Appeal from judgment on report of referee.

Action by John L. Wegenaar & Son against Christ Dechow. From a judgment in favor of defendant, the plaintiff appealed. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

James L. Quackenbush, for appellant.

Alexander Wentworth, for respondent.

ADAMS, J. This action was brought by the firm of L. Wegenaar & Son, of which the plaintiff is the surviving member, to recover a balance claimed to be due upon the contract price of a monument which the plaintiff's firm had erected upon the defendant's cemetery lot, in pursuance of a written contract entered into between the parties. This contract bore date the 13th day of March, 1893, and provided, among other things, that the plaintiff's firm would furnish and erect, during the month of May following, a monument of the description and dimensions therein specified, which was to be constructed of dark Quincy granite, "free from unnatural spots and rust." The contract price of the monument was $415, of which sum $100 was payable upon delivery and the balance on the 1st day of October thereafter. It was further expressly agreed that the monument should "remain the property of L. Wegenaar & Son, with the right to remove and hold the same until fully paid for"; and that, if the monument was not as described in the contract, the defendant would not be required to pay for it "until satisfactory as per agreement." The execution of the contract is admitted by the defendant, but he contends that the plaintiff's firm did not fulfill the same according to its terms, in that the monument furnished was not free from unnatural spots and rust.

The issues joined herein were tried by and before a referee, who found that the "monument was not free from unnatural spots and rust, but, on the contrary, was affected with rust, which appeared in spots on the surface of the monument." The evidence upon this branch of the case, while somewhat conflicting, was, in our opinion, amply sufficient to support the above finding of fact; but, of course, this, of itself, did not justify the conclusion reached by the learned referee that the plaintiff was not entitled to recover the balance claimed to be due upon the contract. The contract sued upon was clearly executory in its character, and the language employed therein was descriptive of the article and work to be furnished, which obligated the vendor to furnish a monument which should in all essential particulars correspond with such description. Pierson v. Crooks, 115 N. Y. 539, 22 N. E. 349. But, before the vendee could take advantage of any failure upon the part of the vendor to perform in this respect, it became important for him to show that he had fulfilled a reciprocal obligation which rested upon him; for it is a well-settled rule that if after discovery of, or a reasonable opportunity to discover, any patent defect in an article delivered under an executory contract of sale, the vendee neither returns nor offers to return the same, but omits to give the vendor notice or opportunity

to take it back, the contract becomes executed, and the vendee, in the absence of a collateral contract of warranty, is conclusively presumed to have accepted the article, and cannot thereafter be heard to complain of its inferior quality. Pierson v. Crooks, supra; Iron Co. v. Pope, 108 N. Y. 232, 15 N. E. 335; Reed v. Randall, 29 N. Y. 358; Dowdle v. Bayer, 9 App. Div. 308, 41 N. Y. Supp. 184.

The vital question, therefore, to be considered in this case is whether or not the evidence contained in the record brings the defendant within the operation of the rule above stated; and, in order to determine this question intelligently, it will be necessary to refer briefly to some of the salient facts of the case. While the contract in question called for the erection of the monument in the month of May, 1893, it was not in fact finished and placed in position until the very last days of the following August, at which time the defendant testifies that he noticed discolorations which he thought indicated the presence of rust, and that he so informed the plaintiff John L. Wegenaar, who was present supervising the work, but was assured by him that the discolorations to which his attention had been directed were only surface marks or stains caused by the iron bands used in shipping; that the same would disappear in time by the action of the elements; and that they could, if necessary, be readily removed by the application of water and oxalic acid. The defendant further states that, relying upon these assurances, he paid $108 upon the contract, but stated to the plaintiff at the time of paying this sum that if the monument did not come out all right it would go hard with him; that he thereafter followed the plaintiff's instructions, and attempted to remove the rust spots by scrubbing the same with water containing oxalic acid; that this treatment apparently had the desired effect when the monument was wet, but as soon as the water dried off the spots reappeared, and seemed to be somewhat larger. Notwithstanding all this, however, the defendant thereafter, and on the 13th day of September, made another payment of $50 upon the contract, and this, it is now contended, furnishes indubitable proof of acceptance and acquiescence.

It is not to be denied that the defendant, at the time of making this last payment, did have some knowledge of the defect of which he now complains, and with this knowledge such payment would ordinarily be regarded as equivalent to a formal acceptance (Pierson v. Crooks, supra); but the defendant insists that he was induced to make the payment by the plaintiff's urgent solicitations, and in reliance upon the assurance which he had received that the spots would disappear after one or two heavy rains. It appears, and the learned referee has so found, that up to this time there had been no rain of any account, but that shortly thereafter a heavy rain set in, which lasted several days; that, following this storm, the spots, instead of disappearing, increased in size and intensity, and other spots manifested themselves. Thereupon, and on the 3d day of October, the defendant notified the plaintiff in writing of this fact, and informed him that the balance of the contract price would be ready as soon as he produced a satisfactory monument as per agreement. This was, we think, equivalent to a refusal to accept, and that it

was so regarded by the plaintiff is apparent from the fact that he thereafter sent a man to make another attempt to remove the spots, which was not sufficiently successful to warrant the person sent in demanding of the defendant a further payment.

But was a rejection at this time, and in these circumstances, sufficient to relieve the defendant from a fulfillment of his contract? The authorities above referred to, as well as many others which might be cited, all hold that the vendee is entitled to full opportunity of inspection before determining whether to accept or reject the article purchased; but, in order to avail himself of this right, it must be exercised within a reasonable period after the opportunity to inspect presents itself, and if, in the meantime, the vendee does something inconsistent with the exercise of that right, he forfeits it. Benj. Sales, § 706. Thus, an unequivocal acceptance may be regarded as a waiver. Sprague v. Blake, 20 Wend. 61; Stone v. Browning, 68 N. Y. 598. And undoubtedly payment of the contract price or a part thereof, with knowledge of a defect in the quality of the article purchased, would have the same effect; but, at the same time, conditions may exist which will excuse a party from exercising the right of rejection promptly, and even relieve him from the consequences of acts which would, under other circumstances, be regarded as equivalent to acceptance, as, for example, where acceptance is induced by artifice or fraud of the vendor. Dutchess Co. v. Harding, 49 N. Y. 321. It is true that there is no claim that the vendor in this case was guilty of actual fraud, but the learned referee has found, upon evidence which is quite convincing, that he did induce the defendant to defer action by representations which turned out to be false in fact; and, even if such representations were made in good faith, the defendant was lulled into inaction by them; and this circumstance, we think, brings the case within the operation of the familiar rule that a party is relieved from the consequences of a failure to perform any obligation where such nonperformance is caused or induced by the acts of the other party. Stewart v. Keteltas, 36 N. Y. 388; Leslie v. Insurance Co., 63 N. Y. 27; Winch v. Insurance Co., 86 N. Y. 618. The plaintiff, it seems, was a dealer in, and manufacturer of, tombstones. Presumably he had had considerable experience in constructing them out of Quincy granite, and knew something of the peculiarities of that species of stone; while, upon the other hand, the defendant had little or no knowledge upon the subject. When, therefore, the plaintiff assured the defendant that the spots he discovered were not rust, and that they would disappear with proper treatment, or as soon as subjected to the influence of a heavy rain, the defendant had a right to believe him, and if, in reliance upon this assurance, he did not act as promptly as he otherwise would have done, and if, in the belief that the rain would have the effect claimed for it, he made a payment or did some other act which in different circumstances would be regarded as a waiver of his right to reject, we think that, within the principle of the cases cited, the plaintiff is estopped from invoking the same rigid rule as would be applied if the defendant had been uninfluenced in his actions by the plaintiff's declarations; and, if so, then the

learned referee was correct in his conclusion that the defendant had the right to rescind the contract, and to recover back the moneys paid by him to the plaintiff. Taylor v. Saxe, 134 N. Y. 67, 31 N. E. 258.

Judgment affirmed, with costs. All concur.