[L. A. No. 7900. In Bank.—September 12, 1927.]

## G. E. NOLL, Respondent, v. NICH G. BAIDA, Appellant.

[1] FRAUD—CONFLICTING EVIDENCE—DECISION ON—APPEAL.—In civil cases tried without a jury where fraud is an issue, it is for the trial court to determine the weight of the evidence, and while it cannot find fraud upon a mere suspicion, yet if there is any substantial evidence tending to prove fraud it is for the trial court to determine whether such evidence outweighs or preponderates over that adduced in opposition thereto, and when the trial court has found that such evidence does so preponderate, its decision thereon is final, and an appellate court has no right or authority to disturb such a finding, even though the appellate court may be of a contrary opinion as to the weight of such evidence.

[2] ID. — SALE OF ORIENTAL RUGS — MISREPRESENTATION — WAIVER.— Whether the purchaser of oriental rugs, subsequent to his discovery of the falsity of the seller's representations on the sale, waived his right to rescind the contract, was a question properly for the determination of the trial court from the evidence before it.

[3] ID.—RESCISSION.—In such a case, taking into consideration the character of the property and the manner and extent of its use by the purchaser, the fact that no material damage was occasioned by such use, and that in using it the purchaser only permitted it to remain on the floors of his home at the place where it was delivered and left by the seller after notice of rescission, it cannot be held on appeal that the acts of the pur-

---

1. See 2 Cal. Jur. 921; 2 R. C. L. 194; 12 R. C. L. 834.

chaser were inconsistent with his claim that he had rejected the rugs and rescinded the sale thereof.

[4] ID.—DELAY IN RESCINDING CONTRACT.—Where a purchaser of oriental rugs, who had little experience with such property, upon discovery of false representations made by the seller which induced the purchaser to buy, demanded that the seller take the property back and repay the purchase price, but was assured by the seller that the rugs were as represented, the seller cannot be permitted to take advantage of the delay in rescinding the transaction caused by his fraudulent and false statements.

[5] ID. — PROMPT RESCISSION — DETERMINATION BY TRIAL COURT.—In such a case, where the evidence shows that the purchaser, after being reassured by the seller that the rugs were as represented, consulted an expert and immediately upon receiving the report of the expert served notice of rescission of the sale, the trial court was justified in finding the sale was promptly rescinded.

---

(1) 4 C. J., p. 887, n. 59; 35 Cyc., p. 84, n. 13.    (2) 35 Cyc., p. 158, n. 98.    (3) 35 Cyc., p. 148, n. 19.    (4) 35 Cyc., p. 154, n. 57. (5) 35 Cyc., p. 151, n. 43.

APPEAL from a judgment of the Superior Court of Los Angeles County. Ralph H. Clock, Judge. Affirmed.

The facts are stated in the opinion of the court.

U. T. Clotfelter, Richard Hartley and Charles Cassatt Davis for Appellant.

Neil S. McCarthy, Earl L. Banta and McCarthy, Nolan & Preston for Respondent.

CURTIS, J.—This action was instituted to recover the purchase price of eight oriental rugs purchased by plaintiff of defendant. The ground upon which said recovery is sought is that defendant falsely and fraudulently represented the quality and character of said rugs at the time of their purchase. The case was tried by the court without a jury, and judgment rendered in favor of the plaintiff for the full amount of said purchase price. The defendant has appealed from said judgment, and the matter is now before us upon a record prepared under the provisions of section 953a of the Code of Civil Procedure. The court found as

---

5.    See 12 Cal. Jur. 795; 24 R. C. L. 357.

true the allegations of the complaint that the statements and representations made by the defendant at the time of and immediately prior to said purchase were false and fraudulent. The appellant contends that the evidence was not sufficient to justify this finding. Appellant admits that the evidence as to the falsity of these representations was conflicting, but claims that as the allegations of the complaint charged that appellant was guilty of fraud such allegations must not only be proven by a preponderance of evidence, but that an appellate court is authorized to weigh such evidence for the purpose of determining whether it meets this requirement. Appellant's position is stated in his brief as follows: ''The mere fact that there may be some conflict in the testimony does not preclude this court from passing upon the sufficiency of the evidence in the record on the subject of fraud, including that for and against the allegations of the complaint.'' Among the cases cited by appellant in support of this contention are *Truett* v. *Onderdonk,* 120 Cal. 581 [53 Pac. 26]; *Abrams* v. *Daugherty,* 60 Cal. App. 297 [212 Pac. 942]; *Everett* v. *Standard Acc. Ins. Co.,* 45 Cal. App. 332, 338 [187 Pac. 996]. These cases hold, quoting from *Abrams* v. *Daugherty, supra,* ''The presumption is always against fraud. This presumption approximates in strength that of innocence of crime (*Truett* v. *Onderdonk,* 120 Cal. 581, 588 [53 Pac. 26]). One who seeks relief from fraud must allege it and prove it by clear and satisfactory evidence. A mere suspicion of fraud is not sufficient (*Everett* v. *Standard Accident Ins. Co.,* 45 Cal. App. 332 [187 Pac. 996, 998]).'' It may be conceded that the presumption against fraud approximates that of innocence of crime, yet in criminal cases where the defendant must be proven guilty to a moral certainty and beyond all reasonable doubt, the sole right to weigh the evidence is in the jury, and after the jury has exercised this right, the appellate court is without authority to set aside the findings of the jury if there is any substantial evidence to support it. The appellate court may upon appeal from a judgment of conviction in reviewing the evidence be of the opinion that the evidence against the defendant is weak, and that it preponderates in his favor, yet the verdict must stand because it is the exclusive right of the jury to weigh the evidence and its determination as to the weight to be given such

evidence is final. **[1]** So in civil cases tried without a jury where fraud is an issue, it is for the trial court to determine the weight of the evidence, and while it cannot find fraud upon a mere suspicion, yet if there is any substantial evidence tending to prove fraud, it is for the trial court to determine whether such evidence outweighs or preponderates over that adduced in opposition thereto, and when the trial court has found that such evidence does so preponderate, its decision thereon is final, and an appellate court has no right or authority to disturb such a finding, even though the appellate court may be of a contrary opinion as to the weight of such evidence (*Tucker* v. *Beneke,* 180 Cal. 588 [182 Pac. 299]; *Mead* v. *Mead,* 41 Cal. App. 280 [182 Pac. 761]). The appellant also cites *Ryder* v. *Bamberger,* 172 Cal. 791, 799 [158 Pac. 753], and quotes the following from the decision: "For, if there be two inferences equally reasonable and equally susceptible of being drawn from the proved facts, the one favoring fair dealing and the other favoring corrupt practice, it is the express duty of court or jury to draw the inference favorable to fair dealing. (*Levy* v. *Scott,* 115 Cal. 41 [46 Pac. 892]; *Thomas* v. *Visalia Electric Co.,* 169 Cal. 658 [147 Pac. 972]; *Casey* v. *Leggett,* 125 Cal. 664 [59 Pac. 264]; note to *Burch* v. *Smith,* 15 Tex. 219 [65 Am. Dec. 154].) For fraud must always be proved, so that when the plaintiff's case goes no further than to establish a state of facts from which the inference of fraud may or may not be reasonably drawn, he has failed to establish his charge by a preponderance of the evidence, and it becomes the duty of court or jury, as has been said, to find in favor of innocence and uprightness."

Had appellant quoted the balance of the paragraph in which the foregoing excerpt is found, we think he would have found an answer to his argument. The balance of said paragraph reads as follows: "This does not, of course, mean that the fraud must be proved by direct evidence. This is not always nor even often possible, but it does mean that the indirect evidence and the inference to be drawn from the proved facts must be so convincing as to satisfy trial court or trial jury that fraud was designed and accomplished. If, therefore, we should accept appellant's statement as above quoted, that the sole proposition is

whether fraud *can* be inferred from the admitted facts, the complete answer is that, conceding that fraud might be inferred, the trial court upon substantial evidence has declined to infer it, and its action in so doing is not here open to question.'' The question of inference to be drawn from proven or admitted facts is not involved in the present inquiry. But the question raised by the present contention of appellant is whether we shall sustain the finding of fact by the trial court, or whether we shall in view of all the evidence in the case set it aside for the reason that in our opinion the preponderance of the evidence is against said finding. Appellant states in his brief his position as follows: ''The testimony offered by respondent in support of the fraud charged was given by two witnesses, neither one of which had made any special study of the subject to which their testimony related, and particularly of dyes, dye processes, or the methods used in coloring oriental rugs. Neither had made any study of the processes of the manufacture of such rugs. On the other hand, the evidence offered by the defendant to refute the fraud charged in the amended complaint consists of the testimony of seven witnesses, one of whom had taken a special university course upon the subject of dyes and dye processes; and most, if not all, of these witnesses were thoroughly familiar with the processes and manufacture and treatment of such rugs.'' Yet the trial court accepted the testimony of respondent's two witnesses, with all its alleged infirmities, and discarded that of appellant's seven witnesses. This determination of the trial court upon the evidence before it was final and conclusive, and this court is without the power to disturb it.

The evidence shows that the rugs were purchased in June and July, 1921. Some time in the latter part of that year or in the first part of the following year the respondent noticed that the rugs were fading and he called in an expert, who informed him that the rugs were not what they were represented to be by the appellant. Thereupon respondent went to appellant and told him that the rugs were fading or getting lighter. Appellant offered to take the rugs back, but assured respondent that he was mistaken in his belief that they were of inferior quality and further assured him that the rugs were as represented. As a result of this conversation the respondent testified that he was ''reconvinced''

of appellant's honesty, and nothing was done in regard to rescinding the sale at that time, respondent stating, "I will let it go, but if I find they are wrong, then I will call on you again, for I believe that I am right about the rugs fading." Thereafter respondent called in another expert, who examined the rugs and reported to respondent the following June, which would be in June, 1922, that the rugs were not as represented by appellant. Thereupon respondent immediately notified appellant of the result of his investigations and demanded that he take back the rugs and return to respondent the purchase money. The rugs were purchased to be used by respondent in his home, and upon their purchase they were delivered to the home of respondent and there laid upon the floors of said home by appellant. They remained there from this time up to the time of respondent's demand that appellant take them back and refund the purchase money. Appellant refused to take the rugs back and they continued to remain where they were placed by appellant upon the floor of respondent's home up to about April, 1923, shortly before the trial of said action. It is contended by appellant that respondent waived his right to rescind by thus using the rugs after his discovery that they were not as represented by appellant, and after his notice of election to rescind said sale. He cites as authorities supporting this contention the following cases: *Hogan* v. *Anthony,* 52 Cal. App. 158 [198 Pac. 47] ; *United Motor S. F. Co.* v. *Callendar,* 30 Cal. App. 41 [157 Pac. 561] ; *Knight* v. *Bentel,* 39 Cal. App. 502 [179 Pac. 406]. These cases all involved the right of a purchaser of an automobile to rescind a purchase thereof, and in each case the claim was made that the purchaser had, after the discovery of the defects in the automobile, upon which he based his right to rescind, used the automobile to such an extent and in such a manner that he waived any right to rescind he may have originally had on account of such defects. In *Hogan* v. *Anthony, supra,* the court said: "If, after the discovery of the misrepresentation, he conducts himself with reference to the transaction as though it still were subsisting and binding, he will not thereafter be permitted to impeach the validity of the contract by seeking to rescind it or to escape performance of his covenants." The claim that re-

spondent has waived his right to rescind the sale by reason of his use of the rugs was not raised at the trial, and there is authority for holding that it cannot be raised for the first time on appeal. (*Bell* v. *Anderson*, 74 Wis. 638 [43 N. W. 666].) It was further held in that case, where it was sought to rescind a sale of a piano on account of the false and fraudulent representations made by the vendor at the time of the sale, and where it was shown that the piano had been taken by the vendor to the home of purchaser, and that after notice of rescission the vendor had left the piano in the home of the purchaser, and that the latter and members of her family had used said piano, but not to such an extent as to injure it, that such use was not inconsistent with the rescission of the contract. Further the court said: "But the most that can be successfully claimed by the defendant is that it was for the jury, under proper instructions, to say whether the use was such an assertion of ownership by the plaintiff as would render nugatory the offer to return the instrument." In this connection the following language from the case of *White* v. *Miller*, 43 Pa. Sup. Ct. 573, is apposite: "It is practically conceded that the place of delivery was the defendant's residence, and it would follow that that would be the place of rejection. The defendant was not bound to return them to any other place, and if his contention be the correct one, as soon as the proper notice was received by plaintiff of the rescission of the contract, it was then his duty to remove the goods." In the present action it is not claimed that respondent used the rugs, or in any manner exercised ownership over them, except to leave them where they were placed by appellant, and where appellant permitted them to remain after respondent had served upon him the notice of rescission of the sale. Neither can it be claimed that the rugs were materially damaged by said use after the discovery by respondent of the false representations of the appellant. The evidence shows that the life of oriental rugs under ordinary use is many years, some witnesses testifying that they last one hundred years or more. In the case of machinery or an automobile it is different. Practically all use of such articles tends to cause the same to wear out or deteriorate. At best their life is but for a few years. In the cases relied upon by appellant it also appears that the purchasers, after the discovery of the false repre-

sentations, did not permit the property purchased to remain
where it was at the time of its delivery to them by the
vendor, but removed the same and used it in their business
or pleasure, thus exercising dominion of it, inconsistent
with their claim that they had rejected it by a rescission of
the sales. Under these circumstances we do not think these
cases can be regarded as authorities conclusive of the rights
of the parties in the present action. [2] On the other
hand, we regard the question whether respondent, by the
use of the rugs subsequent to his discovery of the falsity of
appellant's representations, waived his right to rescind, one
properly for the determination of the trial court from the
evidence before it. There was no express finding upon this
question for the reason possibly that it was not made an
issue by defendant in his answer. The findings as a whole,
being in favor of the respondent, are at least impliedly
against any waiver of his right to rescind. [3] Taking
into consideration the character of the property and the
manner and extent of its use by respondent, the fact that
no material damage was occasioned by such use, and that in
using it respondent only permitted it to remain at the place
where it was delivered and left by appellant after notice of
rescission, we are of the opinion that such acts by respond-
ent were not inconsistent with his claim that he had rejected
the rugs and rescinded the sale thereof.

[4] The court found "That promptly upon the discovery
of the falsity of said representations which, as aforesaid had
induced plaintiff to make the purchase of said eight oriental
rugs, plaintiff rescinded said contract of purchase of said
eight rugs, and on or about June 23, 1922, notified the de-
fendant that plaintiff had rescinded the same." It is con-
tended by appellant that the evidence is not sufficient to
support this finding. Appellant's version of the evidence is
that respondent, in November, 1921, was informed by an
expert of his own choosing that the rugs were not as repre-
sented by appellant, and that he took no action to rescind
the sale until June 23, 1922, seven months thereafter. If
this were all of the evidence in the case there might be no
question of the soundness of this contention of appellant.
But appellant leaves out of consideration entirely the un-
disputed evidence that respondent immediately on having
his fears that the rugs were fading confirmed by an expert,

reported to appellant the information he had received and asked appellant to take back the rugs and return to him his money; that appellant agreed to do so, but to use respondent's words "he cajoled me along until he got me believing he was honest about it" and "reconvinced me of his honesty." This conversation took place some time between the first part of November, 1921, and the first part of March, 1922. Respondent was not certain as to its date, but said it was either the last of the year 1921 or the first part of the year 1922, and that "it might have been January, February or March, I am not sure—it was early in the year." It is true respondent stated that Mr. Baida would know the date, as it was at the time when they were negotiating an exchange of rugs. Mr. Baida on being called fixed the date as around the first part of November, 1921. The trial court, of course, could have rejected Mr. Baida's evidence and accepted the statement of respondent. After this conversation respondent consulted another expert, who examined the rugs, and about the 1st of June, 1923, reported to respondent that they were not as represented by appellant. Immediately thereafter respondent served notice of rescission and a demand for a return of the money paid by him for the rugs. The trial court in finding that respondent had promptly upon the discovery of the fraud rescinded the sale, evidently placed some reliance upon the evidence of respondent of this conversation between the parties, in which the respondent was "reconvinced" of appellant's honesty and therefore did not press at that time a rescission of the sale. It might be stated here that the evidence shows that respondent had no experience with oriental rugs, and that his knowledge regarding them was extremely limited. He so informed appellant at the time he was negotiating for the purchase of the rugs he subsequently bought, and that he would have to rely upon the advice of someone familiar with rugs of that character before he would purchase any. On the other hand, appellant was a dealer in oriental rugs and informed respondent that he had been in business in the same spot in the same town for thirty years. When, therefore, respondent reported to appellant his suspicions that the rugs were not as they had been represented to him and that these suspicions had been confirmed by the opinion of an expert, and demanded that

appellant take back the rugs and return the purchase price, he no doubt would have enforced this demand by proper action in order to make the same effective had it not been for the assurance of the appellant which caused respondent to allay his suspicions and to make further investigation before taking definite action. That appellant under such circumstances should not be permitted to take advantage of the delay caused by his fraudulent and false statements, we think is both obvious and just. To suffer him to do so would be to permit him to reap an advantage from his own wrong. The dictates of common honesty are opposed to any such untoward transaction. It would seem unnecessary to cite any authority in support of a proposition so fair and just. A case with facts in some respects similar is reported in 33 App. Div. 12 [53 N. Y. Supp. 240], the case of *Wegenaar* v. *Dechow,* where the court said: "It is true that there is no claim that the vendor in this case was guilty of actual fraud, but the learned referee has found, upon evidence which is quite convincing, that he did induce the defendant to defer action by representations which turned out to be false in fact; and even if such representations were made in good faith, the defendant was lulled into inaction by them; and this circumstance, we think, brings the case within the operation of the familiar rule that a party is relieved from the consequences of a failure to perform any obligation where such nonperformance is caused or induced by the acts of the other party. *Stewart* v. *Keteltas,* 36 N. Y. 388; *Leslie* v. *Insurance Co.,* 63 N. Y. 27; *Winch* v. *Insurance Co.,* 86 N. Y. 618. The plaintiff, it seems, was a dealer in, and manufacturer of, tombstones. Presumably he had had considerable experience in constructing them out of Quincy granite, and knew something of the peculiarities of that species of stone; while upon the other hand, the defendant had little or no knowledge upon the subject. When, therefore, the plaintiff assured the defendant that the spots he discovered were not rust, and that they would disappear with proper treatment, or as soon as subjected to the influence of a heavy rain, the defendant had a right to believe him, and if, in reliance upon this assurance, he did not act as promptly as he otherwise would have done, and if, in the belief that the rain would have the effect claimed for it, he made a payment or did some other act which in different

circumstances would have been regarded as a waiver of his right to reject, we think that, within the principle of the cases cited, the plaintiff is estopped from invoking the same rigid rule as would be applied if the defendant had been uninfluenced in his actions by the plaintiff's declarations; . . . '' In that case it appears that the statements of the plaintiff therein, which caused the defendant to delay rescission, were found by the court not to have been fraudulently made. Nevertheless, the court held that plaintiff was estopped from invoking the rigid rule usually applicable in such cases. The present case is much stronger, as the evidence shows that the statements made by appellant which caused respondent to delay action were false and fraudulent.

[5] After this conversation, in which respondent says that he was reassured of appellant's honesty, respondent consulted another rug expert. Whether he did so at once or whether he waited until the following June is not clear from the evidence. From respondent's evidence it appears that he did so immediately after his conversation with appellant. But whenever it was that respondent consulted this last-named expert the evidence is uncontradicted that the expert did not report to respondent his opinion regarding the rugs until the month of June, and that immediately on receipt of said report respondent served upon appellant notice of rescission of said sale, and a demand for the return of the purchase price of the rugs. Under these circumstances we are unable to hold that the trial court was not warranted in finding that respondent rescinded the sale promptly. As to whether the rugs were as represented by appellant was not a question easy of determination, and it was not one that could be determined definitely at any precise time. The process of fading was an exceedingly slow one, and it took time to determine whether the rugs were really fading or not. The art of manufacturing oriental rugs is one more or less shrouded in mystery, and whether those purchased by respondent were the kind and character which appellant represented them to be at the time of their purchase was a question upon which, it seems, even those who are supposed to be familiar with such articles are not agreed. While the witnesses for respondent testified that the rugs in question were not as represented, the seven witnesses for appellant gave contrary testimony. In the light of these

facts, therefore, to have required the respondent to fix a definite date when he could say that he had positive knowledge of the fraud practiced upon him, and to require that this date be fixed at the earliest point of time when he began to suspect that the rugs were defective, but without any real knowledge that they were so, would be an unreasonable requirement and would not be justified by any rule of law or principle of justice. The trial court refused to adopt such a course, and in doing so we think acted in accordance with the law governing the matter. The trial court might have held that respondent, after suspecting that the rugs were fading and after consulting the first expert and receiving his report, thereby acquired knowledge of the falsity of appellant's representations, or knowledge of facts sufficient to put him on inquiry as to the truth of such representations, notwithstanding the positive statements made to respondent by appellant, who was himself an expert, that the rugs were not fading and that they were as represented by appellant. On the other hand, the trial court, as it evidently did, may not have considered such evidence sufficient to require respondent to rescind at that time, but that he was entitled to make further investigations as to the quality of the rugs before taking any definite action. Such matters are peculiarly and solely in the province of the trial judge to decide and one not reviewable by an appellate court. ''Section 1691 of the Civil Code requires the party entitled to rescind, 'to rescind promptly, upon discovering the facts which entitle him to rescind.' Whether or not the defrauded party has rescinded 'promptly' will depend upon all the circumstances of the particular case, and is, of course, a question primarily for the trial court.'' (*French* v. *Freeman,* 191 Cal. 579, 589 [217 Pac. 515, 519].)

From the foregoing it is our opinion that there was sufficient evidence to justify the finding that respondent promptly upon the discovery of the false representations regarding the rugs rescinded the sale thereof and demanded a return of their purchase price.

The other questions raised by appellant in his brief are without merit. The judgment is affirmed.

Richards, J., Preston, J., Langdon, J., Shenk, J., Seawell, J., and Waste; C. J., concurred.

Rehearing denied.