[Civ. No. 4301. Third Appellate District.—October 28, 1931.]

A. E. VUILLEUMIER et Ux., Appellants, v. DORSEY M. KELLEY et Ux., Respondents.

DORSEY M. KELLEY et Ux., Respondents, v. A. E. VUIL-LEUMIER et Ux., Appellants.

Carroll Allen, Lyle Pendegast and William A. Sumner for Appellants.

Rohe & Freston and Ralph E. Lewis for Respondent.

BURROUGHS, J., *pro tem.*—The above causes were consolidated for trial and are brought here on one record. The first cause mentioned was commenced for the purpose of having a deed, absolute in form, made and executed by the plaintiffs Vuilleumiers to the defendants Kelley declared a mortgage. The second cause was commenced by the Kelleys, as plaintiffs, to eject from the premises described in the above-mentioned deed, the defendants Vuilleumiers. Issues were joined in the two actions, and, after trial, findings and judgment in favor of the Kelleys were made and entered in both actions. The Vuilleumiers have appealed. The court found that the deed was not a mortgage but was an absolute conveyance of the property described therein by the Vuilleumiers to the Kelleys and also found that the latter were entitled to the possession of said property. The cause is brought to this court under the alternative method of appeal. The record discloses without conflict that on March 29, 1927, and for a number of years prior thereto, the appellants were the owners of and in the possession of a portion of the Rancho San Rafael situated in the county of Los Angeles, state of California; that on the day last named said property was encumbered by a deed of trust previously

given by the appellants to the Citizens Trust & Savings Bank of Los Angeles, as trustee, to secure the payment of a promissory note in the principal sum of $15,000, together with interest and certain other charges as specified in said note; that the appellants had defaulted in the payments required and the property had been advertised for sale in accordance with the terms of said trust deed. Several days before the sale, William J. Chitarin, a relative of the appellants who acted for them in an effort to raise money to pay off the amount due under the terms of the promissory note and trust deed, was introduced by one James E. Bond to the respondent Dorsey M. Kelley. From this part of the transaction there is a material variance in the testimony of the witnesses and from the viewpoint we take of the case it is necessary to cite only so much thereof as may be necessary to sustain the findings of the court that the transaction constituted a *bona fide* sale of the property involved and was not a mortgage.

Dorsey M. Kelley testified that he was introduced to Chitarin about March 26th by Mr. Bond; that Chitarin wanted to borrow some money to pay off the loan; that he, Kelley, told Chitarin that he did not lend money, but that if the property was going to be sold—foreclosed at a sale and it was a good buy, he might be interested in buying it. The witness and Chitarin then visited the property, and a few days later he, the witness, told Chitarin that he had just come to California and did not know anything about conditions here, but the property looked good to him and if he could buy it at the right price he would be willing to do so, and give Chitarin an option to rebuy it, but he would not do anything that was not done under the advice of the escrow department of the bank with which he did business; that Chitarin agreed to that, and the next day the parties met at the bank. They were referred to Mr. Collyer of the escrow department and the witness told Mr. Collyer of the agreement of the parties and asked him if it could be done fairly and squarely, which Collyer seemed to doubt, and he said the matter must be referred to the legal department. Messrs. Collyer, Chitarin, the witness and both appellants went to the office of Mr. Nevitt, an attorney, and after being advised of the facts as outlined above, the attorney advised that if it were ever contested the court might look

through the transaction and misconstrue it. The witness then turned the deal down and left the bank. That evening Chitarin and the two appellants called at respondent's home and they again tried to get him to put up the money. The witness finally made the proposition that he would buy the property, pay them $1,000 in money, pay the indebtedness and give them a lease of the property for a year and they agreed to that. The next morning appellants, Chitarin and the witness again met at Mr. Collyer's office and the witness told Collyer that he had agreed to buy the property outright without any conditions, and pay appellants $1,000 in money, pay off the note and give them a lease of the property one year rent free. Mr. Collyer asked them if it was agreeable to them and they said yes. They again went to Mr. Nevitt's office and told Mr. Nevitt the proposition, and Mr. Nevitt leaned over the table and said to appellants: "Do you know now that you are giving up all your equity and all your rights to this property?" and they said, "Yes". As the witness did not know the true state of the title, escrow papers were signed and the $1,000 went through escrow, also the lease and deed; that the witness, as soon as sufficient papers had been signed, hurried to his bank and received a certified check for $18,000, and deposited it with the trustee, to prevent a sale of the property. The instruments were subsequently drawn, closing the deal by which respondents were given a deed to the property and the debts were canceled.

L. S. Collyer testified that the parties came to his office and Mr. Kelley stated the transaction as above outlined by him; that he took the parties to Mr. Nevitt, who explained to them that such a transaction would be looked upon with suspicion by a court and that Kelley therefore refused to enter into the deal; that the next morning, being the day of the sale, all parties again came to his office and Mr. Kelley explained that appellants and Chitarin had been very insistent that he accommodate them, and that they were about to lose their home, and that they had decided to go through on the basis of an outright sale of the property; that the other parties said yes, that was what they had agreed to do. The witness took them all to Mr. Nevitt's office, where the agreement was again stated by Mr. Collyer to Mr. Nevitt and Mr. Nevitt asked Chitarin and the Vuilleumiers if they understood that it was

an outright sale of their property and that Mr. Kelley was to give them a lease of the property for a year, and did they understand that Mr. Kelley would be under no obligation at the end of the year to resell them the property and they said yes, they understood; that the witness then took all of the parties to Mr. Leon Keys in the escrow department of the bank and told him the parties desired to open an escrow for the sale of the property, the consideration to be $1,000 and the procurement of a release of the reconveyance of the trust deed that was about to be foreclosed; that it was necessary that arrangements be made with the Citizens Bank to stop the sale. The witness then telephoned the Citizens Bank, but they refused to postpone the sale unless they had the money. He told this to Mr. Kelley and the latter asked how much they required, and they said $18,000 and Mr. Kelley said he would get the money up there. The escrow instruments were signed just before Mr. Kelley left. Leon Keys prepared the escrow papers.

Mr. Keys' evidence shows that the appellants and their adviser, Mr. Chitarin, were fully advised that the deal was a sale.

Guy T. Nevitt testified that the respondent Dorsey Kelley came to his office with the parties to the transaction, being brought there by Mr. Collyer; that the deal was explained to him and after questioning Kelley and Chitarin, the witness stated that in his opinion it was a subterfuge, at least it looked like it to him, and that he was afraid the court would look at it the same way; that he thought it was a subterfuge to conceal a loan, and that if it really was a loan it was usurious; that after explaining to the parties that a *bona fide* sale could be made for a consideration, that would be all right; that Kelley said he could not make any deal that was not legal; they left the office of the witness without reaching a conclusion; that the next day they returned and stated they had agreed upon a sale of the property; that the consideration was to be "the amount necessary to redeem from the foreclosure sale, plus the thousand dollars, plus a lease to live in the place one year. I asked him if they were all in good faith about it, and if they meant it, and if they understood what I had said to them the day before; and the Captain (Chitarin) said he guessed that was the

best deal he could make, or else he was going to lose the property." All the documents carrying out the conditions of the escrow agreement are drawn as a completed sale.

As against this evidence, William J. Chitarin testified that the final agreement entered into with Mr. Kelley was that the latter should pay off the loan secured by the trust deed; that the loan was to run for a year at the rate of eight per cent per annum and Kelley was to receive a bonus of $2,000. That it was a "gentleman's agreement" for a loan, with the further agreement to reconvey the property at the expiration of one year, upon the payment to the Kelleys of the amount loaned, with interest and the bonus. This evidence is in a measure corroborated by the evidence of the appellants. There is also some evidence that at the time of the deal the appellants were not in good health and were thus imposed upon. But there is nothing in the record either by way of evidence or pleading to show that any undue advantage was taken by the respondents. There is also evidence that the value of the property was from $21,000 to $50,000, both at the time of the transaction and at the time of the trial. ■ The foregoing does not contain all of the evidence received, but it is sufficient to show that the finding of the court that the transaction was a *bona fide* sale and not a mortgage is sustained by substantial evidence, and therefore cannot be successfully attacked on the ground of insufficiency of the evidence.

■ The first point of attack by the appellants is the failure of the court to find the value of the property on March 29, 1927. We believe that this claim is disposed of by the fact that such issue is not material to sustain the judgment. The issue before the court was whether or not the deed under which respondents hold title was intended by the parties as a mortgage. While the testimony of the witnesses as to its value would, in connection with the rest of the evidence, be more or less persuasive on the subject of what the transaction between the parties really was, it certainly could not control the ultimate decision of the court on that question. In other words, the value of the property was simply a part of the evidence to be weighed by the court. ■ The court found the value of the property to be $25,000. From the reading of the findings on that sub-

ject, it probably relates to the time of the trial. It is claimed that this finding is without support in the evidence. An analysis of the evidence discloses that the value of the property is placed as low as $21,700. It is true that there was no direct testimony that its value was $25,000, but as we understand, the court is not bound by a specific figure, but has a right to consider the figures given and the various theories and processes by which the witnesses arrive at their conclusions and from them arrive at its own view as to the true value. But as said in answer to the final point discussed, the finding does not affect the result in this case.

■ It is also contended that the court erred in finding the rental value of the property at $100 per month. While we deem this point immaterial, if it were material Mr. Crittenden, their own witness, testified that $100 to $125 per month would be a fair rental value. ■ It is also claimed that the answer admits the value of the property to be $49,999.99, by the denial of the answer that property was or now is of the value of $50,000. Under technical rules of pleading, such contention is correct. (*Janeway & Carpender* v. *Long Beach Co.*, 190 Cal. 150 [211 Pac. 6] ; 21 Cal. Jur., p. 155, sec. 105.) However, evidence was offered on this question by both parties and received without objection and we therefore deem the court justified in its finding. In any event, it is only a matter of evidence to be weighed by the court, and no matter what the value of the property, it does not control the action of the court as against the weight of other evidence satisfying the court as to the true nature of the transaction.

■ It is next advanced as a ground for reversal of the judgment that there is no specific finding as to whether or not there was in fact a loan from the defendants to the plaintiffs. Appellants admit that the court intended to find that there was not in fact any loan. The court did find that the property was not transferred to the Kelleys as security for an indebtedness due, nor for the performance of any act or condition by the appellants to anyone else; that there was no agreement between the parties for a loan of any nature whatever; that the transaction was a sale of the property for a good and valuable consideration. These findings are a sufficient answer to appellants' contention.

■ The next objection is that the finding of the court, that the deed was intended to and did transfer said property to defendants in fee simple, and that subsequent to the delivery thereof the plaintiffs retained no title in or to the said property is inconsistent with the court's finding that they did retain a leasehold interest therein. Such findings are not inconsistent for the reason that the finding, which it is claimed is to the effect that the appellants retained a leasehold interest in said property, is that as a part of the consideration for the transfer of the property, the respondents granted to appellants a lease of said property for one year. It was not a retention of an interest in the property by the appellants but a grant to them by respondents. ■

It is next claimed that the court erred in sustaining objections to plaintiffs' offered evidence of the price for which he could have sold the property. This evidence is directed to the value of the property as bearing upon the question of the transaction as a sale or a loan. There is a great deal of evidence upon this subject and the evidence offered would be cumulative. Even though the ruling were error it would under the circumstances be harmless (sec. 4½, art. VI, Const.).

■ It is also claimed that the court's finding five is unintelligible. This finding is to the effect that the allegations of paragraph number five of plaintiffs' complaint are untrue. It is argued that as there are two actions and but one set of findings, it is impossible to ascertain to which complaint the above finding refers. However, the findings are divided into two subdivisions and it is clear from its place in the findings that the one complained of deals with the equitable action. The point is without merit.

The last ground urged for a reversal of the judgment is the sufficiency of the evidence to support the judgment. We have heretofore set forth sufficient of the evidence to sustain the findings and notwithstanding appellants' argument we think the question is one of conflict which has been decided against them. (*Ratto* v. *Younie*, 206 Cal. 421 [274 Pac. 522]; *Capelli* v. *Dondero*, 123 Cal. 324 [55 Pac. 1057]; *Burt* v. *Los Angeles O. G. Assn.*, 175 Cal. 688 [166 Pac. 993].)

We are satisfied that the transaction between the parties was a *bona fide* sale and not a mortgage. This being true,

it necessarily follows that the relief granted in the action of ejectment was also right.

The judgment in both cases is therefore affirmed.

Thompson (R. L.), J., and Plummer, Acting P. J., concurred.