[Civ. No. 4509.  Third Appellate District.—July 8, 1932.]

FRANK PRENTICE, Respondent, v. I. G. ZUMWALT, Appellant.

U. W. Brown for Appellant.

George R. Freeman for Respondent.

THOMPSON (R. L.), J.—The plaintiff brought suit to replevin farm machinery alleged to have been unlawfully, oppressively and maliciously seized and held by the defendant. The jury returned a verdict in favor of the plaintiff for $1550. A judgment was rendered accordingly. From this judgment the defendant has appealed.

It is contended the judgment is not supported by the evidence; that the plaintiff is not entitled to recover possession of the property for the reason that the farm implements were lawfully taken by the defendant, and the plaintiff failed to tender the necessary amount to release the lien pursuant to which they were seized; and that the amount of punitive damages which was allowed is excessive.

The defendant owns and operates a farm implement business at Colusa. His son, George Zumwalt, is employed in the business with the authority to accept and collect debts which are due to the enterprise. The plaintiff is a farmer who lives near Willows. In 1927 the plaintiff bought from the defendant upon an executory contract a binding machine. Part payment was made on the purchase price thereof. The following June it was returned by the plaintiff for the reason that he was unable to operate it successfully. The defendant subsequently resold the machine. A balance of $365, represented by an unsecured promissory note, re-

mained unpaid upon this binder. This note was retained by the defendant. The plaintiff refused to pay it. At the same time the plaintiff owed the defendant another bill on open book account, for the purchase of other farm machinery. The plaintiff made a payment of $400 on this last-mentioned account, insisting that it be credited to that account. The bookkeeper gave him a receipt for this sum, applying the payment as requested. The defendant disregarded this demand and without the plaintiff's knowledge credited the payment to the repudiated note of $365 and accumulated interest. The plaintiff also owed the Bank of Willows the sum of $500 represented by a promissory note secured by chattel mortgage on the farm machinery which is involved in this suit. The mortgage contained a clause authorizing the mortgagee, "at its option . . . (to) remove and sell and dispose of the same (mortgaged machinery) at public or private sale without any previous demand of performance or note to the mortgagor of any such sale whatsoever, notice of sale and demand of performance being hereby expressly waived by said mortgagor".

On October 18, 1930, without the plaintiff's knowledge, the defendant purchased this note and mortgage from the Bank of Willows, stating that he was about to bring suit against the plaintiff on the balance of the $365 note, and desired to attach the machinery described in the chattel mortgage; that he wanted to prevent the first lien of the chattel mortgage from defeating the validity of his proposed attachment. The indorsement on the bank note shows that a payment had been made to the bank the day before it was purchased by the defendant, leaving a balance due thereon of $457.76. Having acquired this bank note and mortgage, the defendant wrote the plaintiff demanding the payment of the other repudiated note for $365 which he held. The plaintiff and defendant met and conferred regarding this unsecured note. Nothing was said about the Bank of Willows note and mortgage. They were not mentioned. The plaintiff flatly refused to pay the unsecured note, saying that the machine which he had returned "would not work".

Without previous notice or demand upon the plaintiff to pay the Bank of Willows note, the defendant, on April 2, 1931, sent four men and two trucks to the plaintiff's ranch

with directions to seize and bring back the machinery. Over the strenuous protest of the plaintiff, the machinery was loaded and hauled away. During the time consumed in loading the machinery, the plaintiff hastened to his neighbor, Mr. C. F. Mason, and arranged to borrow from him the sum of $475 with which to pay the defendant in full for the Bank of Willows note. Mason went with the plaintiff and tendered the check in payment of the note. The workmen refused to accept it, saying they had no authority to do so, but on the contrary were directed to bring the machinery back. The plaintiff then tried to communicate with the defendant by telephone. He was unable to do so, but succeeded in communicating with his son, George, offering to pay the Bank of Willows note in full. George refused the tender. The machinery was then hauled away. The following day the plaintiff and his neighbor, Mason, took $510 in cash to the defendant's place of business and offered to pay the note in full. George again refused the offer. The plaintiff said he offered to pay "whatever the face of the mortgage was, plus the interest. I figured the mortgage, interest and everything would hardly be $500." The evidence is undisputed that Mason then had $470 in cash, and the plaintiff had $40 additional. In none of these conferences regarding the payment of the bank note did any of the parties object to the amount tendered or the manner of the proposed payment.

April 6, 1931, the plaintiff's attorney wrote to the defendant reciting the circumstance of the arbitrary taking of the machinery, and the offer to pay the full amount of the mortgaged indebtedness. He then said: "Notwithstanding your unlawful taking of his property, Mr. Prentice is still willing to pay you the amount due on the promissory note above mentioned." That same day the defendant purports to have sold the machinery, valued at about $1600, to his son George, for $515. April 8th the defendant's attorney answered the above-mentioned letter, saying that the plaintiff still owed the defendant a balance of $406.78 on the unsecured note which was in dispute, upon which he had commenced a suit in the justice's court for $299.99, and that "All Zumwalt wants is the amount of the mortgage together with the amount sued on in the Justice's Court. He will not ask for the expenses of going after the machinery and ·

bringing it down here, but Prentice will have to take the machinery from here to his own place."

The clear import of this letter is that the defendant was using the secured bank note and mortgage to enforce the payment of the disputed note. It amounted to a refusal to surrender possession of the machinery even upon full payment of the secured debt unless the plaintiff also paid the note which was in dispute. The defendant was therefore unlawfully using a secured debt as a club to enforce the payment of another disputed claim. The tender was refused and the machinery was retained.

The plaintiff then commenced this suit to replevin the property and to secure actual and exemplary damages based upon the unlawful, oppressive and malicious seizing and retaining of the farm machinery. A bond was furnished and the machinery was returned. A jury found a verdict of $1550 in favor of the plaintiff. A judgment for that amount was accordingly rendered. From this judgment the defendant has appealed.

■ The jury was warranted in assuming from the evidence that the defendant seized and retained the plaintiff's farm machinery unlawfully, arbitrarily, oppressively and maliciously. It was necessary for the plaintiff to establish the existence of malice in fact, on the part of the defendant, to sustain a judgment for exemplary damages for seizing and retaining the farm machinery. (8 Cal. Jur. 865, sec. 108.) Section 3300 of the Civil Code entitled the plaintiff to such an amount of actual damages as would fully compensate him for the detriment proximately caused by the unlawful seizure and detention of the machinery. He was entitled to exemplary damages, in a reasonable amount within the discretion of the jury, pursuant to section 3294 of the Civil Code, which provides that:

"In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

■ The appellant asserts that since the above-quoted clause of the mortgage authorized the holder thereof in the event of default to "remove and sell" the property

without demand for payment or notice, that his taking of the machinery was lawful and may not furnish the basis for exemplary damages. It is, however, apparent that while this harsh clause of the mortgage may have rendered the seizing of the machinery technically legal, the withholding thereof, after a valid adequate tender was made of the full amount for which the property became security, caused the lien to become automatically discharged and the refusal to thereafter surrender the possession of the property to become illegal. (*Bogue* v. *Roeth,* 98 Cal. App. 257, 261 [276 Pac. 1071]; 26 R. C. L. 654, sec. 39.) ■ A refusal to surrender the possession of the property when an adequate valid tender was made, rendered the defendant liable for all damages which accrued therefrom.

■ The implied finding of the jury that the defendant's conduct in seizing and illegally retaining the farm machinery was prompted by implied malice finds ample support in the evidence. The jury had a right to presume that he invested nearly $500 in purchasing the Bank of Willows note because it contained a harsh clause of which he might take advantage to wrongfully enforce the payment of another disputed claim. He kept the purchase of this note a secret from the plaintiff. He seized the mortgaged property for a technical breach thereof, without demand of payment and without notice. He directed his employees to ''get the property''. He sent four able-bodied men and two trucks to make sure they would not be prevented from taking the machinery from the plaintiff. He refused a tender of the full amount of money due on this secured indebtedness. In effect, his attorney admitted in his letter of April 8th that they were holding the property, not alone to secure the mortgaged indebtedness, but as an oppressive means of arbitrarily enforcing the payment of another disputed note. After notice of an offer to pay the entire debt secured by the mortgage, he sold the property, without notice, to his son for about a third of its value. These circumstances furnish adequate evidence of implied malice and oppression.

■ The record discloses ample evidence of a valid tender of the full amount which was due upon the Bank of Willows note secured by chattel mortgage. From the indorsement on the note it appears there was but $457.76 due thereon October 17, 1930, with eight per cent interest from that date.

This aggregated the sum of $474.56 which was due June 2, 1931, when the machinery was seized and the first tender was made. The check was for the sum of $475. The plaintiff said he also had with him about $40 in cash of his own in addition thereto. Neither the amount of the tender nor the manner of the proposed payment was objected to. The following day a tender in cash of the full amount of the indebtedness which was due on the note was made to George Zumwalt, who refused it without qualification. The tender was therefore adequate and valid. Section 2076 of the Code of Civil Procedure provides:

"The person to whom a tender is made must, at the time, specify any objection he may have to the money, instrument, or property, or he must be deemed to have waived it; and if the objection be to the amount of money, the terms of the instrument, or the amount or kind of property, he must specify the amount, terms, or kind which he requires, or be precluded from objecting afterwards."

In response to the defendant's contention that the evidence is insufficient to show that actual damages were sustained, the plaintiff asserts that the answer which was filed in this case admits the accruing of actual damages in the sum of $25 a day for each day the plaintiff was deprived of the use of the machinery. The complaint alleges: "That plaintiff has been deprived of the use of said property and that the value of the use thereof to plaintiff is the sum of $25.00 per day for each day the same is detained from him." In his answer to this allegation the defendant "Denies that the value of the use of said personal property to plaintiff is the sum of $25.00 per day, for each day the same was detained from him, or that the plaintiff suffered any damage at all by reason thereof." It is claimed this language constitutes an admission that plaintiff's loss by reason of detaining the property was $24.99 for each day he was deprived of the use thereof. This is a correct construction of the pleadings. (8 Cal. Jur. 894.) But the defect in the answer in this regard was waived by the plaintiff in the present case, by voluntarily offering evidence of the actual loss sustained on that account. This procedure on his part amounted to an admission that the pleadings actually tendered the issue of the value of the loss of time during which the machinery was detained from the owner. The plaintiff may therefore not rely on the technical defect in the denial

which is contained in the answer. (49 C. J. 843, sec. 1244; 21 Cal. Jur. 273, sec. 190.)

■ The form of the verdict is not invalid because it fails to segregate the amount of actual damages from the sum which is allowed as exemplary damages. There is ample evidence of actual damages which are not disproportionate in amount to the balance of the verdict which represents the exemplary damages allowed. (*Clark* v. *McClurg,* 215 Cal. 279 [4 Pac. (2d) 149].) The plaintiff testified he was about to commence leveling a five-acre tract of land, the day after the machinery was taken, for the purpose of preparing it for planting to alfalfa; that he was deprived of the use of his tractor and other farm machinery for a period of nineteen days, and that it would cost him $25 a day to rent the machinery necessary to carry on the work. It also appears the plaintiff expended $40 additional to hire trucks with which to return the machinery; that one of the castings was broken, and that he employed two men for one day in returning the machinery. On cross-examination the plaintiff admitted it might not have required more than ten or fifteen days to level the alfalfa land. There is, nevertheless, substantial evidence to support a verdict of at least $400 actual damages which were sustained by the plaintiff. This leaves a balance of $1150 which represents the amount of punitive damages which was allowed by the jury. We are unable to say this amount of punitive damages is disproportionate to the amount of actual damages which is sustained by the record. ■ While it is true there should be a reasonable proportion between the amount of exemplary damages which is allowed and the sum of actual damages, there is a discretion reposed in the jury with regard to the amount which is allowed which will not be disturbed on appeal unless the sum clearly appears to be excessive. (*Wilkinson* v. *Singh,* 93 Cal. App. 345 [269 Pac. 705]; 8 Cal. Jur. 866, sec. 109.) Under the circumstances of this case, the amount of exemplary damages which was allowed by the jury does not appear to be excessive.

The judgment is affirmed.

Parker, J., *pro tem.,* and Plummer, Acting P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 6, 1932.