[Civ. No. 4724. Third Appellate District.—January 28, 1933.]

MINNIE HOLCOMB et al., Respondents, v. LONG BEACH INVESTMENT COMPANY (a Corporation) et al., Appellants.

W. I. Gilbert, Kenneth Keeper and Burton Briggs Crane for Appellants.

Fredericks, Hanna & Morton and Byron F. Story for Respondents.

THOMPSON (R. L.), J.—The respondents recovered judgment for damages in accordance with the verdict of a jury for fraud exercised by the appellants in an exchange of properties. It is conceded there is a conflict of evidence respecting the proof of fraud. The appellants seek a reversal of the judgment on the grounds of alleged error in the reception and exclusion of evidence at the trial, and in the giving and refusing of instructions to the jury. The appellants also contend the conduct of the respondents subsequent to the discovery of the alleged misrepresentations accomplished a waiver of the fraud and a ratification of the terms of the exchange.

The Long Beach Investment Company, a corporation, was the owner of Alta Vista Court apartments situated at Long Beach, including the furniture with which it was equipped. There is evidence indicating this property was worth ap-

proximately $30,000. It was subject to a first mortgage of $23,000 and a second trust deed of $10,000. The defendant Henderson was a stockholder and president of the corporation. The defendant Jasper was a stockholder and vice-president of the corporation. The plaintiffs were owners of 100 acres of land in San Bernardino County called the Chino ranch, which was valued at the sum of $65,000 and was subject to a mortgage of $25,000. C. E. Holcomb is the husband of the plaintiff, Minnie Holcomb. The plaintiffs are sisters. Holcomb acted as their agent. The defendant Henderson and Mr. and Mrs. Holcomb had been intimate acquaintances and members of the same fraternal lodge for many years. The respondents were elderly ladies possessing small business experience and no knowledge of real estate values at Long Beach. In February, 1925, the defendant Henderson had dinner with the respondents at their home in Anaheim. He was familiar with the Chino ranch, having previously negotiated a loan of $25,000 for them, secured by a mortgage on the ranch. He then suggested an exchange of this ranch for the Alta Vista Court apartments which he told them belonged to C. J. Jasper of Oakland and was worth $78,000. He declared that the income from the apartments amounted to $500 a month. The respondents were then told the apartments were subject to a first mortgage of $23,000 and an additional indebtedness of $10,000 represented by an unrecorded trust deed. There is evidence indicating that the apartments cost the defendant corporation only $30,000 a short time before the exchange was negotiated. The income from the property did not exceed three or four hundred dollars a month. The existence of the $10,000 trust deed is questionable.

Henderson subsequently sent his associate Jasper to negotiate the exchange. Jasper acted as the agent for the respondents. A written agreement of exchange of properties was signed by the respondents and by Jasper, the purported owner of the apartments on February 27, 1925. The exchange was consummated the following month, and the respondents took possession of the apartments in April. The Alta Vista Court apartments were acquired by the respondents subject to the first mortgage of $23,000 and the unrecorded trust deed purporting to secure an

indebtedness of $10,000. A new trust deed for this sum of $10,000 was executed to the defendants.

A few months after the exchange of properties was consummated, Henderson began to urge the respondents to pay this $10,000 indebtedness. Regarding this demand, Mr. Holcomb testified: "Mr. Henderson . . . told me that they were very hard pressed for money and asked me if I couldn't arrange to take up the trust deed of ten thousand dollars." He suggested that the respondents arrange to refinance their mortgage indebtedness and secure a new loan. In the effort to do this the respondents first discovered the fraud which had been practiced upon them in procuring the exchange. They made an application to the Farm and Home Loan Association, of which corporation R. N. Burgess was president and manager, for the money with which to refinance the encumbrance on their property. An officer from the State Building and Loan Association appraised the property and informed them it was greatly overvalued and that it had cost the defendant corporation only $30,000. In the investigation which followed, the respondents discovered the fraud with which they had been victimized. They first consulted the district attorney with the purpose of instigating criminal prosecution against the individual defendants. This suit for damages was subsequently instituted. The cause was tried with a jury. A verdict of $45,000 damages was rendered against each of the defendants. A judgment for that amount was accordingly entered. From that judgment the defendants have appealed.

The appellants concede that a conflict of evidence exists regarding the amount of damages and the exercise of fraud in procuring the exchange of properties. In their opening brief it is said: "Appellants are not insisting that there was not a conflict of evidence upon the question of the alleged fraud and misrepresentations chargeable to appellants. . . . On the contrary, we assert that there was a conflict of evidence upon the questions, which reflected upon the alleged misrepresented value of the Alta Vista Apartments, as well as upon the question of the amount of respondents' damages." This concession is in accordance with the record. The court is therefore bound to hold under the well-established rule on appeal, that the judg-

ment is adequately supported by evidence of the alleged fraud, and that the amount of the judgment is not excessive.

The appellants assert that the respondents waived their claim for damages for fraud and ratified the exchange of properties by signing a written agreement to that effect after they had discovered the fraud and were fully informed concerning the entire transaction. This waiver is alleged in the answer as a special defense.

We are of the opinion the agreement to waive defendants' liability for fraud is *nudum pactum* and void for failure of consideration and fraud which was exercised in procuring its execution. It is therefore not a valid defense to this action. It appears that Burgess, the president of the Farm and Home Loan Association, from which respondents sought to procure the loan, conspired with the defendant Henderson to procure the release. Burgess knew of the terms of exchange of properties between the defendants and respondents. He knew of the alleged fraud and the threatened prosecution therefor. In negotiating the proposed loan to the respondents, Burgess was in consultation with Henderson regarding the terms thereof. This was in the fall of 1925. The respondents endeavored to borrow $41,000. This was necessary to cover the entire indebtedness on the apartments, including the first mortgage of $23,000, the sum of $10,000 secured by the trust deed, and a subsequent third mortgage securing the further loan of $5,200, together with accumulated interest on these sums and $1600 commissions demanded by Burgess. After conferring with Henderson, Mr. Burgess offered to purchase the Alta Vista Court property for $56,000. He agreed to pay this purchase price by assuming the entire indebtedness of $41,000 and issuing to the respondents "gold bonds" of the Farm and Home Loan Association for the further sum of $15,000. Burgess represented that these bonds were worth their face value and that they were secured by property worth three times their value. There is evidence indicating that Henderson was interested in this repurchase of the apartments. The respondents relied upon the representations of Burgess regarding the value of these bonds. As a condition to the repurchase of the Alta Vista Court property, Burgess required the respondents to sign a written release of all claims of damages against the defendants

for fraud in procuring the original exchange of properties. That instrument was dated April, 1926, and reads in part:

"The undersigned . . . having sold said (Alta Vista) Court to the Farm and Home Loan Association of Los Angeles, receiving therefor in full payment by the assuming of certain indebtedness and payment of cash and notes . . . hereby acknowledge the entire transaction of exchange and sale to be satisfactory in every detail; and in consideration thereof we hereby agree to release and do hereby release H. O. Henderson and the Long Beach Investment Co. and the Farm and Home Loan Association or any person connected therewith from all claim whatsoever, which we, the undersigned, or any of us may have against the said Henderson, Long Beach Investment Co. or Farm and Home Loan Association or any person connected therewith, to date, and particularly release any claim against the above in connection with the exchange of said ranch property for the Alta Vista Court at Long Beach, and hereby state our satisfaction in above transaction."

Relying upon the terms of purchase above expressed and the value of the bonds as represented by Burgess, the Alta Vista Court property was sold and the foregoing release was signed. The chief consideration for the execution of this release was the $15,000 in gold bonds. This consideration failed. Burgess never did deliver bonds of the face value of more than $7,000. In lieu of the remaining bonds he delivered four several promissory notes signed by him of the aggregate face value of $6,950. Nothing further was ever received on the purchase price of the property. Both the notes and the bonds were worthless. Henderson testified that the bonds were worthless. The Farm and Home Loan Association was soon thereafter declared to be a bankrupt corporation. The respondents were unable to collect any sum whatever from the notes or bonds. There was therefore a total failure of consideration for the execution of the release. It became *nudum pactum* and void for want of consideration.

Moreover, the record indicates that Burgess and Henderson conspired to fraudulently procure this release of liability. They conferred regarding the terms of the proposed purchase of the property. As president of the Farm and Home Loan Association, Burgess must have known the bonds of his corporation were worthless when he agreed to transfer

them to the respondents as an inducement for the execution of the release. Henderson testified that they were worthless. Evidently the respondents were the victims of a double fraud. The very language of the release indicates the conspiracy of Burgess and Henderson to procure the document. It not only purports to release the defendants, who were parties to the original exchange of properties, but evidently anticipating a similar charge of fraud against the participants in the last transaction, it also releases the "Farm and Home Loan Association, or any person connected therewith". If the defendants were not secretly conspiring with Burgess to procure this release, there was no motive or reason for Burgess to barter for a release of the defendants from fraud on account of the former exchange in which he was not involved. If the defendants were not parties to procuring the release by delivering worthless bonds and notes in consideration therefor, then they are not privy to the contract; they furnished no consideration therefor and may not defend its validity against the charge of fraud by which it was procured.

It is true that a claim for damages for fraud may be waived by stipulation or conduct of the injured party subsequent to the discovery of the deceit, when he acts with full knowledge of the fraud. Under such circumstances the fraud may be waived by acquiescence or ratification of the transaction. (*Schmidt* v. *Mesmer,* 116 Cal. 267, 271 [48 Pac. 54]; *Howland* v. *Scott,* 117 Cal. App. 275 [4 Pac. (2d) 200]; *Conner* v. *Butler,* 113 Cal. App. 502, 514 [298 Pac. 546].) Such purported release is, however, no defense to a subsequent suit for damages based upon the fraud when the instrument of release is also procured by fraud and lacks consideration. Since every executory contract must be supported by a valid consideration and its absence renders the instrument *nudum pactum* and void, an agreement which is not supported by a consideration is unenforceable. (Sec. 1550, Civ. Code; 6 Cal. Jur. 166, sec. 115; 1 Elliott on Contracts, 442, secs. 253, 254; 6 R. C. L. 683, sec. 91.) The purported release is therefore void. It furnishes no defense to the suit for damages for fraud against the defendants in the present case.

Under the pleadings in this case it was not erroneous for the court to exclude evidence of the price for

which the defendant subsequently sold the Chino ranch. That was not involved in the measure of damages for fraud in procuring the exchange of properties. The measure of damages in the present case is the difference between the actual value of the property conveyed to the respondents, at the time of the exchange, and the value thereof as represented by the defendants. (12 Cal. Jur. 843, sec. 88.) The respondents were not charged with misrepresenting the value of their ranch. The exclusion of evidence of the price for which this ranch was subsequently sold was harmless.

■ At the request of the plaintiffs, the jury was correctly instructed respecting the measure of damages, as follows:

"The rule of damages in a case of this kind has been declared by the courts of California to be the difference between the actual value of the property received by the person alleged to have been defrauded, and what the value of that property would have been if the alleged fraudulent representations had been true. Hence, in this case if you find for the plaintiffs and against defendants, your verdict should be a sum which represents the difference, if any, between what you find the actual value of the Alta Vista Court was at the time of the exchange, and what the value of the Alta Vista Court was represented to be at the time of the exchange." (12 Cal. Jur. 843, sec. 88; *Hunter* v. *McKenzie,* 197 Cal. 176, 186 [239 Pac. 1090]; *Wood* v. *Niemeyer,* 185 Cal. 526 [197 Pac. 795]; *Hines* v. *Brode,* 168 Cal. 507 [143 Pac. 729].)

The jury was also further correctly instructed that in ascertaining the amount of damages suffered by the respondents in the present action, neither the value of the Chino ranch nor the sum for which it was resold by the defendants was to be taken into consideration, since the only issue respecting valuation which is involved in the pleadings in this case refers to the difference between the actual and the misrepresented value of the Alta Vista Court property. There is no error in giving these instructions to the jury.

■ The appellants contend that the court erroneously charged the jury that:

"The answer of the defendants admits that the Alta Vista Court at the time of the exchange was not of a greater value than $30,000. You are therefore instructed that in your deliberations you must consider that it is an agreed and proven fact in this case, that the value of said Alta Vista Court at the time of the exchange was the sum of $30,000."

Respecting the value of the Alta Vista Court, including the furniture, the complaint alleges, "That said property was not at said time nor ever has been of the reasonable market value of more than $30,000." In reply to this allegation, the answer "denies that said property was not of the market value of more than $30,000". No further allegation respecting the value of the apartments was made in the answer. This language is a negative pregnant and is an admission that the property was not worth substantially more than the sum of $30,000. It constitutes an admission that the property is worth only a trifle over $30,000. The court therefore correctly instructed the jury that the answer constitutes an admission that the value of that property was $30,000. (21 Cal. Jur. 154, sec. 105; *Janeway & Carpender* v. *Long Beach Paper & Paint Co.*, 190 Cal. 150 [211 Pac. 6]; *Vuilleumier* v. *Kelley,* 117 Cal. App. 723, 730 [4 Pac. (2d) 557]; *Williams* v. *Myers,* 110 Cal. App. 265, 287 [294 Pac. 61]; *Prentice* v. *Zumwalt,* 124 Cal. App. 646 [13 Pac. (2d) 379].)

The appellants contend, however, that the defect in their answer, amounting to a failure to deny that the Alta Vista Court property was of a greater value than $30,000, was cured by tendering the issue of value in the admission of evidence at the trial on the part of both the plaintiffs and defendants of the actual value of the property. It will be observed the plaintiffs did not admit by the language of their complaint that the property was worth $30,000. They merely alleged it was not worth "*more* than $30,000". Since the measure of damages in this case is "the difference between *the actual value* of the property [at the time it was acquired] . . . and what the value of that property would have been if the alleged fraudulent representations had been true", it became necessary for the plaintiffs to prove the actual value thereof in order to support a judgment for damages. They

accordingly proved by the witness Clifton that the lot and building was worth "about $30,000". Lough testified, "I believe I appraised the lot at $5,000 and the building at twenty-three at that time, a total of $28,000." Persons, the loan investigator for the Mutual Building and Loan Association testified, "Lot value I placed at $7,000 and building $23,000, a total of $30,000." This evidence is not in conflict with the issue tendered by the pleadings. It merely tends to establish the actual value of the property to be a sum not exceeding the maximum figure alleged in the complaint as a basis for estimating damages by deducting that sum from "what the value of that property would have been if the alleged fraudulent misrepresentations had been true". This evidence did not justify the defendants in disregarding the admission of their answer to the effect that it was worth not more than $30,000. It is true that two witnesses were permitted to testify for the defendants that the property was worth $50,000. That evidence is in conflict with the admissions of the pleadings and may be disregarded. The court was therefore justified in instructing the jury in accordance with the pleadings that "The answer of the defendants admits that the Alta Vista Court at the time of the exchange was not of a greater value than $30,000." The defendants may not complain that the court further instructed the jury they must accept the figure of $30,000 as the valuation of the apartments at the time of the exchange. There is some evidence it was then worth less than that sum. An appellant may not complain of an instruction more favorable to him than he deserves.

It is true the admission of evidence under a defective allegation of a pleading, without objection, will generally operate as a waiver of the defect. This rule is invoked on the theory that the issue is tendered by the consent of litigants indicated by the reception of evidence without objection in spite of a defective pleading. (21 Standard Encyc. of Proc. 411; *Prentice* v. *Zumwalt, supra.*) The rule resulting in the waiver of a defective pleading is not extended to absolute admissions of the pleadings. It is confined to mere defective or inartistic pleadings, the construction of which may be open to doubt respecting the meaning thereof. Under uniform California authorities

the allegation of the answer in the present case constitutes a negative pregnant which amounts to an absolute admission on the part of the defendants that the value of the property was $30,000. The court and jury were bound by this admission. The reception of evidence in conflict therewith raised no issue, and was harmless. The challenged instruction regarding that issue is not prejudicial. In *Hall* v. *Polack*, 42 Cal. 218, 225, it is said:

"All evidence contrary to the admissions of the pleadings should be disregarded, the admissions being binding on the party. (1 Greenl., Ev., secs. 27–205; *Mulford* v. *Estudillo*, 32 Cal. 131.)"

To the same effect are the cases of *Economy Home Builders, Inc.*, v. *Berry*, 95 Cal. App. 106 [272 Pac. 307], and *Paine* v. *Keszthelyi*, 83 Cal. App. 449 [256 Pac. 864].

The appellants assign the giving of several instructions at the request of the respondents involving the invalidity of the written relinquishment of defendants' liability for fraud, as erroneous. It is claimed the rescission of this document required the return of the notes and bonds to Burgess as a prerequisite to repudiating its validity on the ground of want of consideration. It is asserted the evidence does not support the implied finding of a lack of consideration.

These challenged instructions charge the jury, in effect, that if they find that the consideration wholly failed, for which this release of liability was executed, then the document is *nudum pactum* and void, and furnishes no defense to the present action. The court further instructed the jury that: "If you find that the release was procured by fraud, . . . (and) If you further find that such consideration had no value at the time of the discovery of the fraud, then I instruct you that they can repudiate the release, and are not bound thereby, even though they failed to return the consideration, for the reason, as you have been advised elsewhere in these instructions, that the law does not require useless acts, and the return of a consideration which has no value, is in law considered to be a useless act."

These instructions contain correct declarations of the law. They are not erroneous. In 1 Elliott on Contracts, page 444, section 254, it is said:

"By failure of consideration is meant that a sufficient consideration was contemplated by the parties at the time the contract was entered into but either on account of some innate defect in the thing to be given or nonperformance in whole or in part of that which the promisee agreed to do or forbear nothing of value can be or is received by the promisee. As indicated by this definition, failure of consideration may result from lack of value in the thing given or from the act of one of the parties. Where the thing contracted for is a nullity it is ineffectual as a consideration and will not support a promise based thereon."

In the present case the release in question was executed in consideration of the payment to respondents of the sum of $15,000 in notes and bonds which were represented by Burgess to be worth that sum of money. We think the evidence sufficiently shows that all of these notes and bonds were worthless. It follows that "nothing of value" was received by the respondents in consideration for the written release. Since the "thing contracted for", to wit, the notes and bonds, were valueless, the contract of release "is a nullity". The release is therefore ineffectual for any purpose and will not support the promise based thereon. In section 254 of Elliott on Contracts, above cited, it is further said:

"Should there be a partial failure of consideration a recovery *pro tanto* may be had in case the contract is divisible."

In this case the contract of release is not divisible. It is either enforceable *in toto,* or not at all. We are of the opinion it is absolutely void for want of consideration.

Assuming, without so deciding, that the invalidity of a written release under the circumstances of this case depends upon the procedure for rescission which is prescribed by section 1691 of the Civil Code, restoration of the notes and bonds was not necessary as a prerequisite to the repudiation of the instrument as void for lack of consideration and fraud. █ It is true the ordinary rule of procedure in equitable suits for rescission requires that "as a condition precedent to the right to maintain an action in equity for cancellation of an instrument, the party complaining must, prior to bringing suit, restore to the other party everything of value received from him by reason of

the transaction which included the execution of the instrument, or must offer to restore the same upon condition that such party shall do likewise''. (4 Cal. Jur. 764, sec. 7.) Restoration of property received is, however, not required when it is valueless. (*Gifford* v. *Carvill*, 29 Cal. 589; *Rosemead Co.* v. *Shipley Co.*, 207 Cal. 414 [278 Pac. 1038].) Section 9 of 4 California Jurisprudence, page 767, asserts that restoration is not necessary when ''the thing received by the plaintiff is of no value whatever to either of the parties; or where the plaintiff has merely received the individual promissory note of the defendant; or where the contract is absolutely void; or where it clearly appears that the defendant could not possibly have been injuriously affected by a failure to restore''. (*Rosemead Co.* v. *Shipley Co.*, supra.) In the present case nothing was received from the defendants in consideration for the written release. Burgess furnished the entire consideration consisting of his valueless notes and bonds. He is not a party defendant in this suit. Nor was he a party to the original exchange of properties. It is inconceivable that he would be injured by a failure to return his worthless notes and bonds.

 Nor is notice of rescission a necessary prerequisite to the instituting of an action for cancellation of an instrument when there is a total failure of consideration therefor. (6 Cal. Jur. 392, sec. 235; *Rosemead Co.* v. *Shipley Co.*, supra; *Richter* v. *Union L. & S. Co.*, 129 Cal. 367 [62 Pac. 39]; *Anderson* v. *Van Camp Sea Food Co., Inc.*, 98 Cal. App. 787, 793 [277 Pac. 1099].)

 Finally the appellants challenge as erroneous the giving of an instruction which charges the jury that one has a right, without investigation, to rely upon positive statements of absolute facts, the truth or falsity of which are known to the one relating them, and which are unknown to the injured party. It is asserted this instruction is prejudicial because it clearly applies to the respondents' relinquishment of appellants' fraud in procuring the original exchange of properties, and that their subsequent effort to contract with relation thereto constituted a waiver.

The authorities upon which the appellants rely in support of this contention are not in point. Each of them may be readily distinguished from the facts in the present case. It is true that a valid agreement which is based upon ade-

quate consideration, and is free from fraud, will extinguish former disputed obligations. (5 Cal. Jur. 399, sec. 14.) But it is said in the text last cited, "A compromise can affect only the rights of the parties thereto or those in privity with them." In section 17 of 5 California Jurisprudence, at page 403, it is said: "A compromise agreement, like other contracts, can be voided for fraud and deceit in its procurement." The appellants in the present case were not parties to the written release. The purported compromise of respondents' claim of damages for fraud was made with a stranger to the original exchange of properties. The compromise failed for lack of consideration and fraud.

Moreover, the appellants may not complain of this challenged instruction for the reason that the exact principle of law upon which it is based was given to the jury in another instruction which was offered by the appellants, as follows:

"You are instructed that the release agreement . . . is to be deemed a good and valid subsisting agreement unless you find that the plaintiffs in this action have proved to your satisfaction that at the time of the execution and delivery of this agreement the same was procured through fraud or that the consideration for said agreement has failed; and I instruct you that the same instructions which I have given you with relation to fraud in the principal case will govern your considerations in connection with any fraud which may have been claimed by the plaintiffs to have been practiced upon them in connection with the release agreement."

In the giving of this instruction the appellants recognize the correct principles of law applicable to the facts of this case.

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.