[Civ. No. 4304. Third Appellate District.—September 30, 1931.]

CHARLES T. HOWLAND, Respondent, v. SALLIE O. SCOTT, Appellant; and Consolidated Cases.

Crail, Shutt, Penprase & Miller and Crail, Shutt, Penprase & Crail for Appellants.

Salisbury & McNeil and M. W. Conkling for Respondents.

PRESTON, P. J.—This appeal involves three suits brought on three promissory notes, and, also, three suits brought to cancel the same three notes for alleged fraud, not in the procuring of the three notes sued upon, but in procuring other notes ·eventually taken up by the execution of the three notes sued upon.

The defense to the suit to cancel and rescind the notes is: First, that the holders took the same in due and ordinary course of business, without notice of the alleged fraudulent representations or other defenses; second, ratification by the makers of these notes after discovery of the alleged fraud; third, acceptance by the makers of these notes of benefits and considerations both before and at the time of the execution of the new notes, which have not been returned.

The record shows that John Scott, Jr., and James Ferguson were engaged in promoting a corporation known as the Great Western Lime and Cement Company. By order of the corporation commissioner certain shares in this corporation were impounded for their benefit as promotion stock, to be issued to them when they had sold a certain amount of the stock for cash. John Scott, Jr., and James Ferguson, being in need of money, induced Sallie O. Scott, the aunt of John Scott, Jr., to execute notes in favor of John Scott, Jr., and James Ferguson, aggregating $10,000, such notes to be used by them as collateral security in obtaining money from the bank. To secure Sallie O. Scott, John Scott, Jr., and James Ferguson gave her their promissory notes, aggregating $10,000, and, also, agreed to give her a part of their promotion stock in said corporation as a bonus for her credit. These notes executed by Sallie O. Scott were by John Scott, Jr., and Ferguson indorsed and sold to Charles T. Howland and R. S. Howland, the plaintiffs and respondents herein.

The proceeds of the sale of these notes were used by John Scott, Jr., and James Ferguson for the purposes of the corporation. When these notes became due, the Howlands demanded payment of Sallie O. Scott. She then claimed and protested to both Howlands that she had been defrauded by her nephew, John Scott, Jr., and James Ferguson. Nevertheless, Sallie O. Scott, on being threatened with a suit for the collection of said notes and in order to get an extension of time for the payment thereof, paid to the Howlands the interest to December 7, 1923, and at the same time gave new notes, one for $6,000, payable to Charles T. Howland and one for $4,000, payable to R. S. Howland. Mrs. Scott, at the time of executing these last notes, petitioned the corporation commissioner and had transferred into her hands 15,000 shares of the promotion stock originally promised to her by John Scott, Jr., and Ferguson. She also kept in her possession the $10,000 note theretofore given her by John Scott, Jr., and James Ferguson. The Howlands also surrendered to her the old notes with the indorsements of John Scott, Jr., and James Ferguson thereon. At the time Mrs. Scott executed the original notes to John Scott, Jr., and Ferguson, she also signed and put into their hands a writing, stating that she had signed said notes for a good consideration and had no defense thereto. She also supplied a financial statement to accompany her notes.

We have set forth only a brief statement of the facts relative to the Sallie O. Scott notes. The facts, however, relating to the Otis Scott and Roy O. Scott note of $2,500 are substantially the same, the findings are the same, and a decision in one case will be determinative of all of them.

The court found, among other things, that: "At the time said notes originally passed into the hands of Charles T. Howland and R. S. Howland the notes were purchased in due course of business prior to maturity and endorsed over to Howlands, for value received from the Howlands, and that neither Charles T. Howland nor R. S. Howland had any knowledge or notice of any defect therein or defense thereto, or of any representations or promises of any kind or character made or claimed to have been made by John Scott, Jr., or by others to the said Sallie O. Scott, and that Charles T. Howland and R. S. Howland were further induced to purchase said notes by the written statement made and put forth

by said Sallie O. Scott to the effect that the notes were executed for a good consideration and that she had no defense thereto.''

The court also found that prior to the execution of these last notes, which was on December 6, 1923, Sallie O. Scott had discovered all of the facts concerning the alleged fraud practiced upon her by John Scott, Jr., and James Ferguson. Also that:

''Upon the presentation of said notes for payment, on or about December 6, 1923, the said plaintiff (Sallie O. Scott) requested additional time in which to pay said notes and agreed that if time were extended for payment she would pay the interest thereon—whereupon the plaintiff (Sallie O. Scott) and said Chas. T. Howland agreed that in lieu of said notes then held by them, aggregating $10,000 and a part of which notes were endorsed by John Scott, Jr., and a part of which were endorsed by Roy Scott, that they would accept two new notes executed by Sallie O. Scott alone, one in the sum of $6,000, payable to Chas. T. Howland, and one in the sum of $4,000, payable to . . . R. S. Howland, payable 30 days after said date; that thereupon (Sallie O. Scott) executed and delivered to the said R. S. Howland the aforesaid note in the sum of $4,000 and to the said Chas. T. Howland the aforesaid note in the sum of $6,000 and thereupon the said notes, with the endorsements of the said Roy Scott and John Scott, Jr., were surrendered to the said John Scott, Jr., and cancelled. That neither the said . . . R. S. Howland nor the said Chas. T. Howland would have surrendered the said notes previously given and bearing the endorsements of Roy Scott and John Scott, Jr., if said . . . (Sallie O. Scott) had not at that time executed such new notes and that said Sallie O. Scott received a further valuable consideration for the execution of the notes herein sued on in the form of certain stock in the Great Western Lime and Cement Co., then given to her.''

The appellants strenuously contend that the evidence is insufficient to support the findings of the trial court.

It is true that the evidence is sharply conflicting upon every material issue involved in these cases. The trial court undoubtedly accepted the testimony of Charles T. Howland and R. S. Howland and their witnesses as being a true and correct version of the entire transaction. The testimony of

these witnesses is amply sufficient to support the material findings of the trial court. ▮ The findings of the trial court upon conflicting evidence are conclusive and all reasonable inferences are to be indulged in favor of the findings. The burden is upon appellants who claim error to show its existence. Furthermore, where two or more inferences may reasonably be deduced from a certain state of facts or circumstances, a reviewing court is not permitted to substitute its deductions for those of the trial court. It follows from what has been said that we are powerless to interfere with the conclusion of the trial court.

▮ The findings of the court bring this case within the rule announced in *Schmidt* v. *Mesmer,* 116 Cal. 267 [48 Pac. 54], where it is said: ''After discovering the deceit, the party defrauded must stand toward the other party at arm's length, must comply with the terms of the contract on his part, must not ask favors of the other party, or offer to perform the contract on conditions which he has no right to exact, and must not make any new agreement or engagements respecting it; otherwise, he waives the alleged fraud.''

To the same effect are *Tucker* v. *Beneke,* 180 Cal. 588, 594, 595 [182 Pac. 299] ; *Monahan* v. *Watson,* 61 Cal. App. 417 [214 Pac. 1001] ; *Randisi* v. *Simone,* 26 Cal. App. 661 [147 Pac. 1176] ; *Hutchison* v. *Security Trust etc. Bank,* 208 Cal. 463, at p. 475 [65 A. L. R. 1059, 281 Pac. 1028] ; *Jackson* v. *Meinhardt,* 99 Cal. App. 283, at p. 289 [278 Pac. 462].

▮ These findings of the trial court, based, as we have shown, upon conflicting evidence, are insurmountable obstacles in the path of appellants obtaining any relief in this court.

Other contentions made by appellants are without merit and require no special discussion.

The judgments must be affirmed, and it is so ordered.

Plummer, J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 30, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 27, 1931.