[Civ. No. 7229. Third Dist. Apr. 14, 1947.]

WILLIAM SCHIED, as Trustee, etc., Appellant, v. BODINSON MANUFACTURING COMPANY (a Corporation), Respondent.

WILLIAM SCHIED, as Trustee, etc., Appellant, v. FREDERICK WILLIAM BODINSON, as Administrator, etc., Respondent.

BODINSON MANUFACTURING COMPANY (a Corporation), Respondent, v. WILLIAM SCHIED, as Trustee, etc., Appellant.

Ernest Clewe and Edwin J. Regan for Appellant.

Maurice E. Gibson for Respondent.

THOMPSON, J.—Three suits growing out of a conditional sale contract to purchase a dragline gold dredge and equipment were consolidated for trial. The actions involve the same issues. The first suit was brought by Golden Gravels Mining Company, a corporation, against Bodinson Manufacturing Company, a corporation, to recover money paid on the purchase price of the gold mining dredge and machinery, together with loss sustained in its operation as the result of

alleged fraud and misrepresentations with respect to the efficiency of the equipment. The second suit was brought by the same plaintiff against Frederick Johan Bodinson who died during the pendency of the action. William Frederick Bodinson, as administrator of his estate, was substituted. The other suit was instituted by Bodinson Manufacturing Company against the purchaser, for money due under the contract of sale. Pending the trial, the mining company was adjudged to be bankrupt and William Schied was appointed trustee of that bankrupt estate and substituted as a party to the suits. For convenience we shall refer to Bodinson Manufacturing Company as "seller," and to Golden Gravels Mining Company as "purchaser."

The purchaser of the dredging machine claimed that the seller was guilty of fraud and deceit in procuring the sale contract, and that it was therefore entitled to recover some $8,500 advanced on the purchase price and for costs incurred in making necessary repairs, together with about $39,800 lost profits in operating the alleged defective machinery. The defective attachments to the dredge consisted chiefly of a system of "Bodinson-Heath jigs" used with the aid of an amalgamator for recovery of gold from the sand and gravel handled, which the court found was inferior to "riffle boards," commonly used, and which the purchaser originally desired to obtain. It was also asserted that the barge, upon which the derrick and machinery were installed, lacked adequate buoyancy and was top-heavy, resulting in frequent submerging of the deck and the capsizing of the boat on one occasion. Other defects were also alleged.

The contract does not contain express warranties regarding the apparatus complained of. Paragraph eight does warrant that each jig will handle at least twelve cubic yards of material per hour, and it provides that, upon demand, riffle boards will be substituted therefor if the Heath jigs are considered unsatisfactory. The evidence shows that the jigs would actually handle twenty cubic yards of material per hour. No demand for substitution of riffle boards was made until June 2, 1939, after operations had been discontinued. Expert evidence was adduced to prove that neither the Heath jig system nor other defects complained of were inadequate when the dredge and machinery were properly operated by experienced workmen and ordinary care was exercised. But that is immaterial since the court determined that the seller

was guilty of constructive fraud in orally misrepresenting the efficiency of the Heath jig system and other machinery alleged to be defective. We are bound by those findings since there is adequate evidence to support them.

The trial court otherwise adopted findings favorable to the manufacturing company. It found that, while the Heath jig attachments were less effective than the riffle board system would have been and that the dredge was therefore operated at a considerable loss of gold, the net value of the gold recovery was, on account of the absence of evidence of the cost of operation, too, uncertain, speculative and incapable of ascertainment to furnish a basis for damages on that account. The court further found that the purchaser, with full knowledge of the fraudulent representations and of all material facts, waived its right to damages by subsequently agreeing with the seller, in writing, to abide by the contract and to fulfill its terms, and by profiting from the subsequent supplying of certain machinery and repairs at the cost of seller. Based upon those findings, judgment was rendered against the purchaser, from which William Schied, the trustee of the bankrupt mining corporation, has appealed.

The important issue to be determined in these cases is the question as to whether the purchaser of the dragline gold dredge and its equipment, with full knowledge of the misrepresentations, defects and material facts, intended to and did waive damages on that account by its subsequent conduct and agreement to abide by and to fulfill the terms of the original sales contract, and by profiting from the new agreement.

The Bodinson Manufacturing Company of San Francisco was engaged in constructing and selling machinery for extracting gold and minerals from gravel, sand or loam. It owned the dragline gold dredge and equipment which were sold September 14, 1938, to the mining company on a conditional sale contract, for $38,110, payable in installments, $7,000 of which was paid in cash and the balance to be paid in monthly installments of $3,000, together with 15 per cent of the gross production of gold derived from operation of the enterprise. The Golden Gravels Mining Company proposed to conduct a gold dredging enterprise in Trinity County. It sought to purchase from seller a dredge equipped with riffle boards, which the court found would recover in operation substantially 85 per cent of the free gold contained in the soil handled. The president of the manufacturing company persuaded the

mining company to buy the dragline gold dredge to which was attached eight steel hull pontoons, derrick and other necessary machinery, together with "Bodinson-Heath roughing jigs," instead of "riffle boards" which the purchaser originally desired, by orally representing that the former were superior to the latter system, and that the jig system, which is commonly used, would reclaim 95 per cent of the gold contained in the material handled. Delivery of the dredge was accepted in Shasta County, where the purchaser had previously watched its successful operation, and the dredge was transported by it to its mining property in Trinity County. The dredge was operated from a barge floated on the surface of a pond of water, to which boat there were attached the pontoons to regulate its buoyancy. Operations were conducted intermittently from October 11, 1938, to June 25, 1939. It appears from the evidence that during the time the dredge was operated it handled 209,000 cubic yards of soil from which it recovered gold of the value of $56,902, and that the use of riffle boards would have produced the gross amount of $96,633. But there is no proof of the cost of operation and overhead expenses. The court therefore found that it was impossible to estimate the net amount of damages resulting from the use of the Heath jig system. Delays in operation occasionally occurred on account of lack of preparation, broken machinery or alleged defects of equipment. There is evidence that the deck of the barge was sometimes submerged beneath the surface of the water, and that the barge once capsized because it was top-heavy. It appears that the barge lacked buoyancy only because it was overloaded, and for the reason that the pontoons were not properly used. During about eight months of continuous operation the purchaser failed to complain to the seller of any deficiency of gold recovered on account of the Heath jig system, and no demand to replace the jigs was made until after operations practically ceased, on June 2, 1939. With full knowledge, on the part of the purchaser, of the alleged fraud and misrepresentations and of all material facts relied upon, at the purchaser's request the seller furnished at its cost new pressure pumps and two additional steel pontoons, the cost of which, amounting to $1,150, by agreement was divided equally between the respective parties. Repairs of machinery were also made at the cost of the seller.

With full knowledge of the alleged fraud and deceit of the seller and of the defects of the jig system and apparatus, the buyer sent to the seller the following letters:

"February 20, 1939

" . . . .

"This letter will confirm our conversation of recent date wherein it was agreed that Bodinson Manufacturing Company would furnish a water pressure pump on the dredge now being operated by Golden Gravels Mining Company, also that Bodinson Manufacturing Company would manufacture a pontoon to be used on the said dredge; the cost of said pontoon to be shared equally by Bodinson Manufacturing Company and Golden Gravels Mining Company; *also that the schedule of payments covering the purchase price of the dredge would continue as heretofore."* (Italics added.)

"February 24, 1939

" . . . .

"Kindly consider as withdrawn our letter to you dated February 4, 1939.

"We expect to resume mining operations on or about March 1, 1939, after a shutdown period of approximately seven weeks. *Regular payments on the Conditional Sales Contract covering drag line dredge will then be resumed. It is our hope that any arrearage in payments will be met as soon as possible."* (Italics added.)

The court determined that the foregoing letters of acceptance of the terms of the original contract by the purchaser, with full knowledge of the material facts, and assurance that it would abide thereby and pay all stipulated installments, together with the supplying of added equipment at the cost of the seller, constituted a new contract and waiver of damages for fraud.

After the modification and renewal of the contract, which may be deemed to constitute a compromise of previous differences between the parties, the purchaser resumed operation of the enterprise which was continued until June, 1939. It was again in default of payments of installments upon the purchase price of the dredge and equipment. After notice, the seller repossessed the dredge on July 1, 1939, and removed it from the mining property. The first one of these actions was commenced by Golden Gravels Mining Company, January 14, 1941.

This is not a suit for rescission of the contract for breach of either an express or an implied warranty contained therein. No such warranties are contained in the contract. The only

express warranty contained in the contract is that each jig would handle twelve cubic yards of material per hour. Each jig actually handled at least twenty cubic yards per hour.

The rule of law is well established that when a completed contract is reduced to writing and executed by the respective parties, it is ordinarily deemed to include, and it supersedes, all previous negotiations and agreements or warranties, rendering incompetent evidence of prior oral warranties or agreements in conflict with the contract. (Civ. Code, § 1625; *Kullman, Salz & Co.* v. *Sugar Apparatus Manufacturing Co.*, 153 Cal. 725, 731 [96 P. 369]; *Monahan* v. *Watson*, 61 Cal.App. 417, 421 [214 P. 1001]; *Calpetro Producers Syndicate* v. *Chas. M. Woods Co.*, 206 Cal. 246, 252 [274 P. 65].)

The foregoing principle does not preclude oral evidence of material misrepresentations constituting fraud which render the contract void from its inception. Such alleged fraud does not vary the terms of a written instrument, nor recognize the contract as valid. It is competent on the theory that no valid contract exists because it was rendered void on account of the fraud. (*Palm* v. *Smither*, 52 Cal.App.2d 500, 506 [126 P.2d 428]; *Darrow* v. *Houlihan*, 205 Cal. 771 [272 P. 1049]; Jones on Evidence, Civ. Cases, 3d ed., p. 660, § 435.) But the appellant in the present cases did not contend that the sale contract was void on account of fraud or otherwise. The mining company specifically affirmed the contract in writing with full knowledge of all material facts, and agreed to abide by its terms. It thereby recognized the contract as valid and binding. It is also true that when the seller of goods or machinery is informed by the purchaser of the purpose for which the articles are to be used, and it appears that the buyer relies upon the seller's skill or judgment with relation thereto, "there is an implied warranty that the goods shall be reasonably fit for such purpose." (Civ. Code, § 1735, subd. 1.) That provision, when applicable, may be deemed to be a part of every contract. But there is a distinction between an implied warranty that machinery is *reasonably fit* for the purpose for which it is purchased, and a mere statement that it is *superior* to some other type or that it will perform the desired work better. There is no implied warranty that a machine is the best on the market, or that it will accomplish a particular degree of effi-

ciency. The implied warranty is fulfilled if the machine is *reasonably* fit to perform the work for which it is purchased.

■ But regardless of the competency of the evidence of prior parol statements of the seller not contained in the written contract, which we do not determine, we are of the opinion the court's finding that such alleged fraud was waived by the purchaser by subsequently agreeing in writing to abide by the terms of the contract and by accepting from the seller, and profiting by, repairs, work, labor and machinery of substantial value which were not required by the terms of the contract, is sustained by the evidence.

■ The authorities are uniform in holding that a party to an executory contract, who, with full knowledge of the facts constituting the fraud complained of, subsequently, with intention to do so, affirms the contract and recognizes it as valid, either by his written agreement or by acts and conduct, and accepts substantial payments, property or the performance of work or labor not required by the original contract, thereby waives his right to damages on account of the fraud. (*Burne* v. *Lee,* 156 Cal. 221 [104 P. 438] ; *Tucker* v. *Beneke,* 180 Cal. 588, 595 [182 P. 299] ; *Ball* v. *Warner,* 80 Cal.App. 427 [251 P. 929] ; *Monahan* v. *Watson, supra; Howland* v. *Scott,* 117 Cal.App. 275 [4 P.2d 200] ; *Schmidt* v. *Mesmer,* 116 Cal. 267 [48 P. 54] ; *Holcomb* v. *Long Beach Investment Co.,* 129 Cal.App. 285, 292 [19 P.2d 31] ; *Jackson* v. *Meinhardt,* 99 Cal.App. 283, 289 [278 P. 462] ; *Blackburn* v. *McCoy,* 1 Cal.App.2d 648, 658 [37 P.2d 153] ; Smith on Law of Fraud, p. 156, § 136; 12 Cal.Jur. 792, § 57; 37 C.J.S. 362, § 69; 106 A.L.R. 172.)

The rule with respect to waiver of fraud is stated in *Burne* v. *Lee, supra,* as follows:

''Now, it is well settled that when a party has been induced by fraud to enter into a contract, he may elect either to rescind the contract by restoring whatever he has received under it, or he may affirm the contract, retaining whatever advantage he may have acquired, and still have his action for damages for deceit practiced upon him in making the contract. This rule is, however, subject to limitations which apply whether the contract, to which the charge of fraud is addressed, is an executed or executory contract. One of these limitations is that *when a party claiming to have been defrauded, enters, after discovery of the fraud, into new arrangements or engagements concerning the subject-matter of*

*the contract to which the fraud applies, he is deemed to have waived any claim for damages on account of the fraud.* The rule is clearly expressed in *Schmidt* v. *Mesmer,* 116 Cal. 267 [48 P. 54], where it is said:

" 'If, after his knowledge of what he claims to have been the fraud, he elects not to rescind, but to adopt the contract and sue for damages, he must stand toward the other party at arm's length; he must on his part comply with the terms of the contract; *he must not ask favors of the other party, or offer to perform the contract on conditions which he has no right to exact, and must not make any new agreement or engagement respecting it; otherwise he waives the alleged fraud.' "* (Italics added.)

The foregoing rule has been consistently followed in numerous cases. It is the accepted rule in all jurisdictions. It appears to apply perfectly to the facts of these present cases, and therefore bars the appellant from recovery of damages for the alleged fraud, as the trial court specifically determined. We think it conclusively disposes of this appeal. With full knowledge of the fraud complained of, the purchaser of the gold mining dredge and its equipment subsequently bargained for, and received from, the seller advice, work, labor, repairs and machinery of substantial value, which the original contract does not provide for, and it deliberately "withdrew" in writing its previous complaint of alleged deficiency of machinery contained in a letter dated February 4, 1939, and specifically acknowledged the validity of the original contract and agreed to abide by its terms and to pay the stipulated installments, without reservations or further conditions. Certainly that conduct clearly indicated an intention to waive the previous alleged fraud and misrepresentations with respect to the efficiency of the machinery. The question of the exercise of fraud and of the application of the doctrine of estoppel depends on the facts of a particular case. The question of whether the declarations and conduct of a party to a voidable contract shows his intention to waive asserted fraud in procuring its execution is a problem of fact to be determined by the trial court or jury. (*French* v. *Freeman,* 191 Cal. 579 [217 P. 515].) It is said in that regard at page 590 of the case last cited that:

"The question of waiver or nonwaiver was one of fact for the trial court to pass upon, and the acts or conduct which

the defendant claims constituted said waiver were the evidence to be considered in determining the ultimate fact of waiver or nonwaiver. . . .

"Whether or not a person has ratified a voidable contract, or elected to affirm it rather than to rescind it, depends primarily upon his intention, and this is shown by his declarations, his acts, or his conduct, which are matters of fact. The question is, therefore, a question of fact for the determination of the jury. (*Del Vecchio* v. *Savelli,* 10 Cal.App. 79, 82 [101 P. 32]; *Wilder* v. *Beede,* 119 Cal. 646, 651 [51 P. 1083]; 27 C.J. 22, 77.)"

We may not hold, as a matter of law in the present cases, that the appellant did not intend to waive the fraud.

Each of the cases cited by the appellant in support of its contention that the alleged fraud was not waived is distinguishable from these actions by the facts which were involved therein.

Finally, the appellant contends that the court erred in failing to adopt findings "upon the issue of the continuation of fraud following the execution of the contract." It is claimed appellant was entitled to a finding on that issue under the allegations of paragraph XIV of the third amended complaint, which reads in part:

"Throughout the entire period during which said dredge was in the possession of plaintiff [appellant] *until on or about May 18, 1939,* . . . said company urged plaintiff to continue the use of said jigs; consulted with officers and representatives of plaintiff with reference to and suggested methods and means of remedying the said defects *in said gold recovery system;* offered and extended its aid, advice and assistance gratis for that purpose; furnished plaintiff without charge parts for said system intended and designed for said purpose." (Italics added.)

The court did not err in failing to find that the alleged fraud was continuing. The court determined that *all* alleged fraud was waived by the subsequent declarations and conduct of the purchaser. That finding includes the conduct of the seller previously quoted and any other alleged acts of fraud contained in the pleadings. Moreover, the foregoing quoted language upon which the appellant relies adds no new acts of fraud. It merely states that the seller "urged plaintiff to continue the use of said jigs" up to May 18, 1939, and "suggested methods and means of remedying the said de-

fects.'' In fact, the affirmative allegations of the purchaser admits that it entered into ''new arrangements . . . concerning the subject-matter of the contract to which the fraud [previously alleged] applies,'' after it had discovered and had full knowledge of the misrepresentations regarding the failure of the jig system to recover as much gold from the material handled as the riffle boards would have secured. That fact brings it directly within the rule of waiver announced in the Burne case, *supra*. Under paragraph eight of the contract the purchaser had a right to immediately demand a substitution of riffle boards for the jig system when it became dissatisfied with the latter. It did not do so until after operations ceased in June, 1939. It is apparent that if further findings on that subject had been adopted they would be bound to be adverse to the appellant.

The measure of damages for fraud exercised in the sale of the property is the difference between the actual value of that with which the purchaser parted ''and the actual value of that which he received, together with any additional damages arising from the particular transaction.'' (Civ. Code, § 3343.) There is a total absence of evidence of the actual value of the jig appliances which appellant received. Assuming that the jig system recovered only an amount of gold much less than the riffle boards would have reclaimed, there is no evidence of the cost of operation. Therefore, there is no proof of the net loss sustained by appellant on that account and the record would not sustain a judgment of damages in any sum whatever.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.