Filed 7/7/22  Cable v. O'Neill CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DENISE CABLE et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>MICHAEL THOMAS O'NEILL,<br><br>Defendant and Appellant. | D078601<br><br><br>(Super. Ct. No. 37-2019-00018657-CU-BC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed.

Arendsen Cane & Molnar, Christian S. Molnar; Atabek & Associates and Jon A. Atabek for Defendant and Appellant.

Dean Gazzo Roistacher, Lee H. Roistacher, Samuel C. Gazzo and Joseph M. Radochonski for Plaintiffs and Respondents.

Denise and James Cable sued Michael Thomas O'Neill for breach of contract and a common count of money had and received after O'Neill failed to repay a loan as required by two written agreements.  O'Neill contended that the loan represented an investment in a business venture and that the

Cables owe him money for litigation expenses that he incurred in pursuing that deal.  The trial court granted summary judgment for the Cables, concluding that the undisputed evidence showed that O'Neill was obligated to repay the loan under the terms of a fully integrated written loan agreement and a subsequent written agreement to extend the repayment terms, neither of which referred to an investment agreement.  O'Neill appeals the judgment contending that the trial court ignored triable issues of fact and misapplied the parol evidence rule.  We conclude that O'Neill has forfeited his claims of error by failing to provide cogent arguments supported by citations to the record and authority.  Even if he had not forfeited his claims, the court properly granted summary judgment because the undisputed evidence established that O'Neill breached written agreements to repay a loan.  We therefore affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A.  *Background*

Denise Cable met O'Neill in approximately 2014 when he was a student in a scuba diving instructor class that she taught for Ocean Enterprises.  At the time, Ocean Enterprise conducted three different types of business: a scuba gear retail store, which included service, rental, and instructional departments; military sales; and a travel division that took clients on scuba diving trips.  Denise and O'Neill became work associates at Ocean Enterprises and friends.  O'Neill also became friends with Denise's husband, James.

In the summer of 2015, O'Neill expressed interest in purchasing the retail scuba gear rental portion of Ocean Enterprises.  O'Neill loaned the owner of Ocean Enterprises, Werner Kurn, money to pay off some business debts while they discussed the potential sale.

2

The Cables considered investing in O'Neill's purchase of the business. They attended a meeting with O'Neill and Kurn's financial advisor to look at the financial information for Ocean Enterprises as part of the financial due diligence process to determine a fair purchase price. After reviewing financial documents provided by Kurn, James Cable expressed serious concerns about the cash flow of Ocean Enterprises.

By the end of 2015, O'Neill had loaned Kurn a total of $300,000. Negotiations continued and in February 2016, Kurn asked O'Neill for an additional loan of $100,000.

B. *February 2016 Loan Agreement*

O'Neill asked the Cables for a loan of $100,000 in February 2016 to enable O'Neill to pursue the business opportunity with Kurn. Although O'Neill intended to provide the money to Kurn, he assured the Cables that the loan would be for only a few months and that O'Neill would pay it back quickly with interest. Denise wrote a check to O'Neill in the amount of $100,000 on February 16, 2016.

According to O'Neill, Denise told him that James required a promissory note, but that the note would be a "fiction, partly to not disclose her status as a silent investor to Kurn and partly to appease her then-separated husband."[1] O'Neill maintains that the $100,000 represented a 25 percent equity investment by Denise that the Cables agreed O'Neill could repay when Kurn paid O'Neill, and that Denise would be responsible for 25 percent of any expenses incurred in attempting to recover funds from Kurn.[2]

---

[1]    The Cables separated in December 2015.

[2]    The court sustained the Cables's objections to statements in O'Neill's initial declaration that they agreed that the funds would serve as an equity investment of $100,000 in Ocean Enterprises, that Denise Cable would act as

3

O'Neill drafted and executed a two-page "loan agreement" dated February 17, 2016, which he e-mailed to Denise. In the e-mail attaching the agreement, O'Neill stated, "we all know this money is going to [Kurn] but this loan and any other subsequent are to me and me alone. For this particular loan to make you more secure of repayment I am selling my cape house as soon as the snow melts and I get home to spruce it up. I am selling the home in any case whether this deal with Werner goes through or not so I will be sure to keep up the payment schedule and have the principal ready for you should you decide not to engage in our scuba venture." He also said, "[i]f we do go forward" he would secure a life insurance policy and list Denise as a beneficiary to "more than cover her investment amount."

---

a silent partner with a 25 percent equity interest in the business, that she would be responsible for 25 percent of any expenses incurred to acquire the business, and that if the acquisition did not go through, "[the Cables] would be repaid when Kurn repaid [O'Neill], basically accepting that as collateral."

However, the Cables did not object to nearly identical passages in O'Neill's second declaration, which he submitted in support of his further opposition to the motion for summary judgment after conducting discovery. They did not object to a statement that the Cables agreed they would be repaid when Kurn repaid O'Neill or that Denise Cable "would be responsible for 25 [percent] of any expenses in recovering the funding back from Kurn." The court overruled the Cables's objections to two sentences in O'Neill's second declaration stating that the Cables "provided the initial $100,000 as Denise Cable's investment in Ocean Enterprises as a 25 [percent] silent partner who would be responsible for 25 [percent] of any expenses incurred by the partnership in the acquisition or operation of the acquired business" and that the "$100,000.00 represented Denise Cable's 25[ percent] equity interest in the business as a silent partner." We decline the Cables's request to find that the trial court abused its discretion in making these later rulings. (*Duarte v. Pacific Specialty Ins. Co.* (2017) 13 Cal.App.5th 45, 52 [in considering a trial court's evidentiary rulings we " 'will only interfere with the lower court's judgment if [the objecting party] can show that under the evidence offered, " 'no judge could reasonably have made the order that he did' " ' "].)

4

The terms of the loan agreement required O'Neill to repay $100,000 with interest at a rate of 10 percent per annum. He agreed to repay the loan "in consecutive monthly installments of interest only . . . commencing the month following the execution of this Agreement and continuing until July 1, 2016. With the balance then owing under this Agreement being paid at that time."

The agreement stated, "This Agreement may only be modified by a written instrument executed by both the Borrower and the Lender." It also stated, "This Agreement constitutes the entire agreement between the parties and there are no further items or provisions, either oral or otherwise."

O'Neill deposited the check on February 17, 2016. He made three interest-only payments between March and May 2016.

C.  *Ocean Enterprises Deal Falls Through*

By the end of May 2016, O'Neill learned that Kurn had provided misleading information about the value of Ocean Enterprises and its profitability. The deal to purchase part of Ocean Enterprises' business fell through. O'Neill eventually sued Kurn in June 2018 for failing to repay the loans that Kurn obtained from O'Neill.

D.  *Interest-Only Payments*

O'Neill did not repay his loan from the Cables by July 1, 2016. He made interest-only payments between July 2016 and January 2018. In February 2018, the Cables and O'Neill discussed a plan to repay the loan.

E.  *February 2018 Agreement to Extend Debt Repayment*

O'Neill prepared and executed a second written agreement on February 12, 2018, titled "Debt Repayment Extension Agreement" memorializing the parties' agreement to extend the debt repayment period under additional terms. O'Neill agreed that he owed the Cables "the sum of $100,000.00, said

5

sum being presently due and payable." In consideration for the Cables's "forbearance," O'Neill agreed to make monthly principal payments of $5,000 plus interest until paid in full, with a full maturity date of October 10, 2019. He further agreed that if he failed to make any payments "punctually on the agreed upon extended terms," the Cables would have "full rights to proceed for the collection of the entire balance then remaining."

O'Neill made loan repayments between March and November 2018. He stopped making payments after November 8, 2018.

F. *Litigation*

The Cables sued O'Neill in April 2019 for breach of contract, money had and received, and unjust enrichment. They alleged that O'Neill had breached the agreement to extend the debt payment by failing to make payments since November 2018. They later amended their complaint to remove the unjust enrichment cause of action.

The Cables moved for summary judgment based on O'Neill's written discovery in which he admitted that the Cables loaned him $100,000, that he agreed to repay the $100,000 with interest, that after making some interest-only payments he entered into an agreement in 2018 to extend the debt repayments, and that he stopped making payments after November 8, 2018.

O'Neill opposed the motion, contending that he needed additional time to conduct discovery regarding triable issues of fact and his affirmative defenses of frustration of purpose, failure to mitigate damages, and equitable estoppel. He did not dispute that there was a written contract, but he contended that defenses to breach of contract existed. Although he agreed that "performance on the contract, namely making loan payments, remains possible," he claimed that the "reason and entire basis" for the contract "namely utilizing the money to acquire Mr. Kurn's business, Ocean

6

Enterprises, was frustrated by the supervening circumstance of non-acquisition due to Mr. Kurn's fraud and unanticipated breach of contract to repay O'Neill." He claimed that Kurn had "thwarted" his attempt to return the Cables's money. O'Neill contended that the Cables had not responded to his phone calls about his lawsuit against Kurn and that they had failed to pay their share of fees and costs to recover money from Kurn.

O'Neill asserted the defense of equitable estoppel, claiming that Denise Cable had orally agreed to be a silent partner in the business venture and that she would pay a 25 percent share of expenses related to that business venture. O'Neill claimed that Denise intended for him to rely on this agreement when he entered into the initial loan agreement but that she intended to renege on the agreement if the venture failed. He contended that he would not have entered into the agreement if he had known that she did not intend to bear 25 percent of the expenses related to the Kurn transaction.

At O'Neill's request, the court continued the summary judgment hearing to allow O'Neill to conduct discovery regarding facts essential to oppose the motion.

O'Neill submitted a further opposition asserting the same arguments. As he had previously, he agreed that "it is undisputed that . . . there was a written contract." However, he contended that the Cables had omitted facts surrounding the initial agreement, namely, oral agreements that Denise Cable would be a 25 percent silent investor in the business venture. O'Neill contended that triable issues of material fact existed regarding "(1) whether the agreement between [the Cables] and O'Neill was characterized as a loan or an investment, (2) the amount of payments made by O'Neill to [the Cables], and (3) the amount due and owing under the Promissory Note in light of Denise Cable's responsibility for partnership losses pursuant to her

7

25 [percent] equity interest and liability." He contended that his duty to perform under the contract was discharged by offset, frustration of purpose, failure to mitigate, and equitable estoppel.

O'Neill did not dispute that he failed to repay the initial loan by July 1, 2016. Nor did he dispute that he entered into an agreement to extend the debt repayment schedule in 2018, with additional terms. He did not dispute that he had made only 12 of the payments of principal and interest required by the debt extension agreement.

In reply, the Cables pointed out that O'Neill admitted in discovery responses that the Cables loaned him $100,000 on February 16, 2016, which he did not repay by July 16, 2016, and that his opposition was essentially silent about the subsequent agreement to extend the debt payment. They argued that there was no genuine dispute about the amounts that O'Neill had repaid.

The Cables argued that any breach of a separate oral agreement that Denise would reimburse 25 percent of O'Neill's expenses related to the Kurn litigation was immaterial to the Cables's breach of contract action because this issue was outside of the pleadings and was barred by the statute of limitations and the statute of frauds. They argued that a frustration of purpose defense was not properly pled as an affirmative defense and, in any event, O'Neill admitted that performance of the contract remains possible and reaffirmed his loan obligation with the agreement to extend the debt repayment after the business deal fell through. The Cables argued that mitigation of damages does not apply to a claim for breach of contract, where damages are fixed by the agreement. Finally, they argued that the claim for equitable estoppel was unintelligible and that any attempt to modify the

8

initial agreement or the agreement to extend the debt payments is barred by the parol evidence rule.

G. *Ruling on Summary Judgment Motion*

After considering the evidence and arguments of counsel, the trial court took the matter under submission. The court subsequently issued a ruling confirming its tentative ruling and granting summary judgment. The court concluded that the undisputed evidence showed that O'Neill entered into an agreement to repay a $100,000 loan under specified terms. The court noted that the short agreement made no reference to any other investment agreement. The agreement stated that it could be modified only by a subsequent written agreement between the parties and it included an integration clause. The court concluded that no provision of the agreement entitled O'Neill to an offset for legal fees and costs related to the Kurn litigation and that the outstanding amount owed was essentially undisputed.

The court rejected the defense of equitable estoppel, observing that O'Neill could not have relied on a separate oral agreement because the loan agreement was fully integrated and could be amended only by written agreement. The court commented that any separate agreement with Denise Cable about litigation expenses related to the Kurn deal would not release O'Neill from his obligation to repay the loan under the terms of the agreement.

The court rejected the defense of failure to mitigate damages as inapplicable to a breach of contract action where damages are fixed by the note. It also rejected the defense of offset as inapplicable because O'Neill did not have a judgment against the Cables.

Finally, the court noted that O'Neill had not pled the affirmative defense of frustration of purpose. The court further commented that, in any

event, the agreement to repay the loan was not conditioned on the successful purchase of the Ocean Enterprises venture and the Cables had not contractually agreed to assume the risk of any failed venture.

The court entered judgment in favor of the Cables and awarded damages in the amount of $69,085.30. The court noted that the judgment may be augmented with recoverable costs as allowed by law and attorney fees pursuant to contract, upon proper motion.[3]

DISCUSSION

A. *General Principles Governing Review of Summary Judgment*

Summary judgment is properly granted if the record demonstrates that there is no triable issue of material fact such that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

In reviewing an appeal from a summary judgment, " 'we examine the facts presented to the trial court and determine their effect as a matter of law.' [Citation.] We review the entire record, 'considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' [Citation.] Evidence presented in opposition to summary judgment is liberally construed, with any doubts about the evidence resolved in favor of the party opposing the motion." (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) We also independently interpret written instruments where the interpretation does not turn on the credibility of extrinsic evidence. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.)

---

[3] The court's order denying the Cables's request for attorney fees is the subject of a separate appeal decided concurrently with this opinion. (*Cable et al. v O'Neill* (July 7, 2022, D079096) [nonpub. opn.].)

However, "our review is governed by a fundamental principle of appellate procedure, namely, that ' "[a] judgment or order of the lower court is presumed correct," ' and thus, ' "error must be affirmatively shown." ' [Citation.] Under this principle, [the appellant] bear[s] the burden of establishing error on appeal, even though [the respondent] had the burden of proving its right to summary judgment before the trial court. [Citation.] For this reason, our review is limited to contentions adequately raised in the [appellant's] briefs." (*Paslay v. State Farm General Ins. Co.* (2016) 248 Cal.App.4th 639, 644–645; *Arnold v. Dignity Health* (2020) 53 Cal.App.5th 412, 423.)

B. *O'Neill's Deficient Brief Forfeits His Claims on Appeal*

O'Neill's opening brief is deficient in a number of respects. The legal argument section includes a single heading stating that the trial court "ignored multiple triable issues of fact and misapplied the parol evidence rule . . . as well as the fraud exceptions to the parol[ ] evidence rule." (Bolding & capitalization omitted.) After quoting the court's minute order at length, O'Neill states that the court did not discuss his affirmative defense that his consent and signature on "the fictional [p]romissory [n]ote and later, related, forbearance agreement" was obtained by fraud "rendering his consent and the agreements voidable at his election." However, he provides no citation to the record to support a claim that his consent to either agreement was obtained by fraud. An appellant must cite to the record to direct the reviewing court to the pertinent evidence or other matters in the record that demonstrate reversible error. (Cal. Rules of Court, rule 8.204(a)(1)(C).) " 'Issues do not have a life of their own: if they are not raised or supported by [substantive] argument or citation to authority, we consider

11

the issues waived.' " (*Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 418 (*Holden*).)

O'Neill also fails to demonstrate that he properly raised the argument that consent was obtained by fraud in the trial court. To the contrary, the record shows that he did not address this affirmative defense in either of his opposition briefs to the summary judgment motion. O'Neill's counsel first raised the issue during oral arguments at the hearing on the motion.

The trial court was not required to consider this issue because it was not fully developed or factually presented in O'Neill's trial court briefs in a manner that would permit the Cables to provide a meaningful response. (See *American Continental Ins. Co. v. C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1281 ["possible theories that were not fully developed or factually presented to the trial court cannot create a 'triable issue' " for summary judgment].) As a general rule of motion practice, courts ordinarily do not consider new issues and evidence presented in reply papers because it deprives the opposing party of an opportunity to counter the argument. (*Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1537–1538.) For the same reason, as a matter of fairness, courts may decline to consider issues raised for the first time at oral argument. (*California Redevelopment Assn. v. Motosantos* (2013) 212 Cal.App.4th 1457, 1500.) Because O'Neill did not adequately raise this issue in the trial court, he is precluded from raising the issue on appeal. (*Holden, supra*, 43 Cal.App.5th at p. 419.)

O'Neill also recites the court's evidentiary rulings and observes that the rulings do not refer to the parol evidence rule, but "respectfully suggests, that it is clear that the [c]ourt improperly is using [the parol evidence rule] to exclude all of the triable issues of fact raised by [O'Neill], and thereby impermissibly granting summary judgment in spite of them."

O'Neill describes, over several pages, general legal principles related to the parol evidence rule and exceptions to this rule based on fraud. He does not, however, analyze how these principles apply, if at all, to the facts of this case with proper citations to the record. Instead, he makes a broad conclusory statement that the court's order granting summary judgment "had the practical effect of ignoring and impermissibly barring any and all evidence despite the authority cited above, and thereby prevented [O'Neill] from proffering his copious evidence proffered in his oppositions to the motion for summary judgment, which would have clearly established or at least raised triable issues of fact necessitating a denial of the motion, and provided [O'Neill] with his right to have those triable issues of fact tried before a jury."

O'Neill does not explain what evidence was purportedly excluded. He does not analyze whether the court abused its discretion in its evidentiary rulings, and he does not demonstrate prejudice. Instead, he apparently expects this court to comb through the record or match up the evidence discussed in the factual history section of his brief to the legal principles listed and then analyze whether there is any support for his contention that the court should have considered parole evidence based on fraudulent inducement. We decline to do so. "[A]n appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record. Rather than scour the record unguided, we may decide that the appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record." (*WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [" 'We are not bound to develop appellants' arguments for them' "]; *Palm Springs Villas II Homeowners Assn., Inc. v. Parth* (2016) 248 Cal.App.4th 268, 287, citing *Del Real v. City of*

13

*Riverside* (2002) 95 Cal.App.4th 761, 768 [it is not the reviewing court's responsibility to search the appellate record for facts or to conduct legal research in search of authority to support the contentions on appeal].)

C. *Summary Judgment Was Properly Granted*

Even if we were to overlook O'Neill's forfeiture based on his deficient brief, the record demonstrates that the trial court properly granted summary judgment because undisputed evidence establishes that the Cables are entitled to judgment based on breach of contract. The elements of a breach of contract action are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.)[4]

O'Neill does not dispute the existence of a written contract. Further, O'Neill has admitted in both discovery and in his pleadings that the Cables *loaned* him $100,000, that he agreed to repay the loan, that he entered into a second agreement to extend the debt payment, and that he has not made any payments on the loan after November 8, 2018. (*Western Bagel Co., Inc. v. Superior Court* (2021) 66 Cal.App.5th 649, 655, fn. 2 [a reviewing court may use statements and arguments in the parties' filings as " ' "reliable indications of a party's position" ' " and " ' "admissions against the party" ' "].)

O'Neill's claim that a dispute exists about whether the money was a "loan" or instead, an "investment" is belied by the language of the agreement

---

[4] The Cables's second cause of action is a common count for money had and received, which is an alternative and simplified form of pleading indebtedness. The trial court did not reach this alternative cause of action because the court determined that the Cables were entitled to summary judgment based on the breach of contract cause of action. We need not address the alternative theory because we conclude that summary judgment was properly granted based on the breach of contract cause of action.

that O'Neill himself prepared. "The interpretation of a contract is a judicial function. [Citation.] In engaging in this function, the trial court 'give[s] effect to the mutual intention of the parties as it existed' at the time the contract was executed. (Civ. Code, § 1636.) Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms. (Civ. Code, § 1639 ['[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . .']; Civ. Code, § 1638 [the 'language of a contract is to govern its interpretation . . .'].)" (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1125–1126.) Extrinsic evidence cannot be used to vary or contradict the unambiguous terms of a written, integrated contract but may be admissible to aid in the interpretation of an ambiguous term. (*Ibid*; Civ. Code, § 1856, subd. (a) ["Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to the terms included therein may not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement"].) Even if there is uncertainty, "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." (Civ. Code, § 1654; *Victoria v. Superior Court* (1985) 40 Cal.3d 734, 739 ["ambiguities in standard form contracts are to be construed against the drafter"].)

The loan agreement states that the $100,000 that the Cables provided to O'Neill was a "loan" that he promised to repay with interest. The agreement includes an integration clause stating that the agreement "constitutes the entire agreement between parties and there are no further items or provisions, either oral or otherwise," and further states that the agreement "may only be modified by a written instrument executed by both the Borrower and the Lender," There is no ambiguity in this agreement that

15

would require looking to extrinsic evidence to understand the intention of the parties.

In addition, it is worth noting that in the e-mail attaching the loan agreement, O'Neill stated that although the money was going to Kurn, "this *loan* and any other subsequent are to me and me alone" (Italics added.) The e-mail suggests that the Cables had not yet committed to going forward with an investment. O'Neill said that he was selling a home "so I will be sure to keep up the payment schedule and have the principal ready for you *should you decide not to engage* in our scuba venture." (Italics added.) O'Neill refers in his briefing on appeal to a portion of this e-mail that uses the word "investment," but he omits the context. The word appears in a separate paragraph that begins by stating, "Also, *if we do go forward* know that I am in the process of securing a 2 million dollar life insurance policy." It then states, "*If we do go forward* and something should happen to me Denise is going to be listed as a beneficiary on my policy which I will be sure to have it more than cover her investment amount." (Italics added.) The context of the e-mail indicates that the $100,000 was a loan, and that O'Neill was considering arrangements to protect a potential future investment. As the trial court appropriately determined, there is no evidence of an investment agreement and any oral agreement for Denise to pay 25 percent of expenses in connection with the potential business venture would not release O'Neill from his obligation to repay the loan under the terms of the original loan agreement and the extension agreement, both of which he drafted.

Even if we were to accept O'Neill's claim that Denise misled him to believe that the original loan agreement was a "fiction" required by James and/or to obscure from Kurn the fact that Denise had agreed to be a "silent investor," a contract obtained by fraud is voidable, not void. A party who

16

believes that he has been fraudulently induced to enter a contract must rescind. (*Village Northridge Homeowners Assn. v. State Farm Fire Casualty Co.* (2010) 50 Cal.4th 913, 921.)

O'Neill did not rescind the contract. Rather, he affirmed the loan by making payments required by the terms of the loan agreement and by preparing and executing the extension agreement in 2018, after the deal with Kurn had fallen through.

O'Neill acknowledged in the 2018 agreement that he "presently owes the creditors the sum of $100,000.00, said sum being presently due and payable," and in consideration of their "forbearance" he agreed "to pay said debt on the extended terms" under certain conditions. This agreement ratified and waived any claim of fraud related to the first agreement. (*Oakland Raiders v. Oakland-Alameda County Coliseum, Inc.* (2006) 144 Cal.App.4th 1175, 1192–1193 [" ' "where a party, with full knowledge of all the material facts, does an act which indicates his intention to stand to the contract, and waive all right of action for fraud, he cannot maintain an action for the original wrong practiced upon him. *Where the affirmance of the contract is equivalent to a ratification, all right of action is gone. . . .* [Thus] where a party, with full knowledge, declines to repudiate a transaction known to him to be fraudulent, and fully and expressly ratifies it, he can neither rescind nor maintain an action for damages" ' "]; *Schied v. Bodinson Mfg. Co.* (1947) 79 Cal.App.2d 134, 142–143 [if the party purportedly defrauded "enters, after discovery of the fraud, into new arrangements or engagements concerning the subject-matter of the contract to which the fraud applies, he is deemed to have waived any claim for damages on account of the fraud" (italics omitted)].)

17

For all of these reasons, summary judgment in favor of the Cables is appropriate.

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to recover costs on appeal.


AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.